GEORGE S. MAWHINNEY, Respondent, *v.* MILLBROOK WOOLEN MILLS, INC., Appellant.

Practice — trial — erroneous refusal to make findings supported by uncontradicted evidence — breach of contract for manufacture and sale of goods — suspension of execution of private contract in order to fill orders for government under National Defense Act — when such suspension sufficient defense to action for breach of private contract.

1. Where, upon the trial of an action without a jury, requests to find made of the trial court were refused which on uncontradicted evidence should have been decided in the defendant's favor and which requests were not inconsistent with the findings already made, a question of law is presented reviewable by the Court of Appeals, and where findings of fact so requested and refused constitute a full and complete defense to an alleged breach of contract set up by plaintiff the judgment against defendant should be reversed.

2. Plaintiff brought this action to recover damages for breach of contract. Defendant interposed the defense that under section 120 of the National Defense Act (39 Stat. 213; Comp. Stat. 1916, § 3115 G) and the orders of the war department made by the authority thereof, contracts with the government superseded the contract with plaintiff and all other civilians and excused the non-fulfillment thereof. The trial court held that the facts did not justify the defense; that the defenses pleaded were insufficient and struck out such defenses and the evidence to sustain them, and gave judgment for plaintiff upon the ground that no order was made by the government prior to November 24, 1917, which required the defendant to give precedence to the government contracts under the National Defense Act. The Appellate Division unanimously affirmed the trial court except that it reinstated the third defense and the evidence relating thereto, which reiterated the first two and set forth the various commands of the government and alleged that thereby the contract with plaintiff was delayed and terminated, and made new findings of fact in conformity with its conclusions and the case comes up on appeal by permission of this court. *Held*, error; that the undisputed facts show that the government made contracts for woolens with the defendant which required the use of its looms and materials, and preference in the execution of the work; that this preference was necessitated within the meaning and purpose of the National Defense Act; that it constituted a good defense for the delay or cancellation of the plaintiff's contract and

that it was immaterial whether defendant sought the government work or whether specific orders for its preference were given by the president or by other officials, since it was the government of the United States acting through its army officers and the act of congress and the necessity of the times brooked no delay. *Held*, further, that the requests to find, made by defendant, should have been granted by the trial court, having been established by uncontradicted evidence and constitute a full and complete defense to the breach of contract set up by the plaintiff.

*Mawhinney* v. *Millbrook Woolen Mills*, 188 App. Div. 971, reversed.

(Argued May 11, 1921; decided May 31, 1921.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 18, 1919, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

*Herbert C. Smyth* and *Roderic Wellman* for appellant. The order as originally placed invoked the National Defense Act, required precedence, and excused delay in the performance of plaintiff's contract. (National Defense Act, § 120; 39 Stat. 213; Comp. St. 1916, § 3115 G; *Stewart* v. *Stone*, 127 N. Y. 500; *Dolan* v. *Rogers*, 149 N. Y. 489; *Heine* v. *Meyer*, 61 N. Y. 171; *Baily* v. *De Crespigny*, L. R. 4 Q. B. 180; *Metropolitan Water Board* v. *Dick, Kerr & Co., Ltd.* [1917, H. L.] 117 L. T. R. 766; *Roxford Knitting Co.* v. *Moore & Tierney, Inc.,* 265 Fed. Rep. 177.)

*Thomas G. Prioleau* for respondent. In view of the unanimous affirmance of the judgment, there being presented here no exception to the admission or exclusion of evidence, the sole question for this court to determine is whether the legal conclusions that defendant, in failing to deliver the ninety pieces of woolen cloth, breached its contract and that plaintiff was thereby damaged, were justified upon the facts as they were found. (*McManus* v. *McManus*, 179 N. Y. 338; *Krekeler* v.

*Aulbach,* 169 N. Y. 372; *People* v. *Steeplechase Park,* 218 N. Y. 480; *Poel* v. *Brunswick-Balke-Collender Co.,* 216 N. Y. 310; *Lancaster Beach Co.* v. *City of New York,* 214 N. Y. 4; *Ryan* v. *Franklin,* 199 N. Y. 347; *Morehouse* v. *Brooklyn Heights R. R. Co.,* 185 N. Y. 520; *Galle* v. *Todd,* 148 N. Y. 270.)

CRANE, J.   On the 9th day of February, 1917, the plaintiff and the defendant entered into a contract in writing wherein and whereby the defendant agreed to manufacture, sell and deliver to the plaintiff one hundred pieces of woolens at the price of $1.75 per yard.   Deliveries were to be made during the months of May, June and July in the year 1917.   The only deliveries made were ten pieces for which the plaintiff duly paid.   The balance of the order the defendant failed to manufacture and deliver.   The time for the delivery of the remaining ninety pieces of woolens was extended until the latter part of October or the early part of November, 1917. The findings state that the extension was made until October or November, 1918, and so we find it in the request to find which was refused.   This, I am quite certain, is a mistake, as in January of 1918 the plaintiff's lawyer wrote a letter demanding damages for breach of the contract.

On May 11th of 1917 the defendant made a contract with the United States government through Col. M. Gray Zaliniski, Quartermasters Corps, U. S. A., whereby it agreed to furnish 200,000 yards of melton and made deliveries in June, July, August, September, October, November and December.   Deliveries were to be made at the depot of the Quartermasters Corps, Boston, Mass. Another contract was made between the same parties on July 27th, 1917, for 100,000 yards of the same woolen, deliveries to be made in the months of September, October, November and December.   On August 25, 1917, another contract was executed for 360,000 yards,

deliveries to be made every month from December to June of 1918, and on November 5, 1917, a still further agreement was executed for 380,000 yards, deliveries to be made every month to December, 1918, with the exception of June. These government orders were for olive drab meltons to be made into uniforms for the soldiers.

The first order was the result of a visit by Emanuel Kaplan, treasurer of the defendant, to Colonel Horton in Washington for the purpose of showing how the government could use less virgin wool in overcoating by using a certain percentage of reworked wool. Col. Horton sent him to Col. Penrose at Philadelphia at which interview the following conversation took place:

" I showed Colonel Penrose this fabric, and spoke to him about this fabric, in view of the fact we have made goods previous to this time for the Allied countries, where reworked wool could be used in army fabric, and Colonel Penrose said to me, after a long conversation about the qualities and benefits and so forth, that the reworked wool had been accepted by the Government — He said, ' Won't you make cloth for the Government?' I said, ' That I couldn't go ahead because we were all sewed up to the civilian trade, and that we are held in high esteem with the civilian trade; we had a good reputation, we made a big name, and we were well known in the country for our class of fabrics,' and he said, '. Don't you know that the Government comes first?' I said, ' Yes, Colonel Penrose, but in the condition of this kind where the mill has got to deliver to the civilian trade, I don't think at the present time we can take on that scale.' ' Well,' he said, ' You know the Government comes first — You proceed, and you will have a letter that you will have to give the Government precedence of the deliveries.' The following day we got notice the contract would come along.' "

On June 16, 1917, Lt. Col. Williamson, depot quarter-

master at Boston, wrote the defendant that there should be no delays in the deliveries of the melton and said: "Orders from the government must take precedence; therefore, in order to carry out the above you are hereby requested to employ all available machinery and means at your command in order to expedite deliveries."

On June 27th, 1917, Colonel Zaliniski, with whom the contracts had been made, wrote to the committee on supplies, council of national defense, at Washington, D. C., that the Millbrook Woolen Mills, Inc., were under contract to furnish 200,000 yards of 30 oz. melton and were having trouble with their civilian customers over deferred shipments. He requested that the customary communication be sent to the mills authorizing them to defer commercial commitments so as not to interfere with the deliveries.

The council of national defense, established by an act of congress passed August 26th, 1916 (39 U. S. Stat. 619), consisted of the secretary of war, secretary of the navy, secretary of the interior, secretary of agriculture, secretary of commerce and the secretary of labor. This council of national defense on July 2, through its committee on supplies wrote the following letter to the Millbrook Woolen Mills, Inc.:

"DEAR SIRS.— Please note that we desire prompt delivery on the 200,000 yards of 30 oz. Melton which you are under contract to furnish the Government, and that you defer, if necessary, all commercial commitments that may interfere with your deliveries on these goods."

Up to this time, while the defendant was proceeding with the government orders, it had not executed a written contract under the May 11th agreement with Colonel Zaliniski. There was some misunderstanding regarding its terms. Therefore, on July 23, 1917, Colonel Zaliniski wrote the mills that the secretary of war had advised that unless it signed the contract with the terms agreeable to the war department, the government would take

control of its plants under section 120 of the National
Defense Act. Later and on October 8th, 1917, a letter
from Captain Poole of the quartermaster's department
to the defendant stated: " The needs of the troops are
so great that you are asked to use your utmost endeavor
to make deliveries," and finally on November 24, 1917,
Newton D. Baker, secretary of war, addressed to the
Millbrook Woolen Mills, Inc., a notice, stating that the
president of the United States, pursuant to the authority
vested in him, requisitioned for public use connected
with the common defense " (a) All cloth in your possession
now ready for delivery to the United States Government;
and (b) all cloth now in process of manufacture by you
for the United States Government, the same to be com-
pleted to conform to the requirements of your contract."
The notice further directed the mills to utilize all
machinery exclusively in the production of cloth
contracted for.

Shortly after the first government contract, and on
May 18, 1917, the Millbrook Woolen Mills notified the
plaintiff that at the urgent request of the United States
government it had taken on a large contract for uniform
cloth to be delivered as soon as possible and that it was
necessary to devote fifty per cent of its looms solely
to the manufacture of this cloth. It requested its cus-
tomers to cancel thirty per cent of the orders undelivered.
Again on June 29, 1917, it wrote to Mr. Mawhinney
another note, stating as follows: " We note that you
have not as yet complied with the request made by our
mill in their letter of May 18th that you cancel 30%
of your order remaining undelivered on that date. As
explained, owing to their obligations to the government
it is impossible to fill our civilian orders complete."

By letter of August 28th, 1917, the defendant wrote
the plaintiff that it would do its best to comply with
the plaintiff's demand for woolens, but that owing to
the fact that the major part of the mill's production

was devoted towards filling the government order, deliveries on civilian accounts had been delayed. The last communication to the plaintiff was December 1st, 1917, and notified him that because of the commandeering of all materials and machinery, the defendant deemed the plaintiff's orders to be canceled.

There is no question but that the government orders under the contracts beginning May 11th, 1917, utilized the defendant's looms and delayed or prevented the execution of the plaintiff's contract.

On these facts, the plaintiff brought this action to recover damages for breach of contract and has been awarded a judgment of $10,393.45 by the court, a jury trial having been waived. The defenses set up in the answer were three. The first defense set up the government contracts and alleged that their execution necessarily curtailed the civilian output. The second defense pleaded the National Defense Act and that pursuant thereto the defendant desisted from making deliveries to the plaintiff. The third defense reiterated the first two and set forth the various government commands above stated and alleged that by reason of them the plaintiff's contract was delayed and terminated. The answer on the trial was also amended so as to extend the time of delivery under the plaintiff's contract to October or November, 1917.

The learned trial judge deemed that the facts did not justify the defenses and that the defenses pleaded, in view of the facts, were insufficient and in his very able opinion stated that he struck out these defenses and the evidence to sustain them and gave judgment for the plaintiff as above stated. The Appellate Division unanimously affirmed the trial court except that it reinstated the third defense and the evidence relating thereto, making new findings of fact in conformity with its conclusion.

The defendant has not had the benefit of a trial court

passing on the weight of the evidence to sustain the third defense. It was all stricken out. The Appellate Division passed upon it. This it could do on review, but not in the first instance. This might require a reversal and a new trial, but we pass the point as there is in our opinion no such conflict in the testimony as to present a disputed question of fact.

The case comes here, therefore, after an unanimous affirmance by permission of this court. The narrow question presented is whether requests to find made of the trial court were refused which on uncontradicted evidence should have been decided in the defendant's favor and which requests were not inconsistent with the findings already made. If such be the case, then a question of law is presented for this court to review. (*Le Gendre* v. *Scottish U. & Nat. Ins. Co.*, 183 N. Y. 392; *Bedlow* v. *N. Y. Floating Dry Dock Co.*, 112 N. Y. 263.)

Requests to find, Numbers 4, 5 and 6, presented such a question. In effect they were that the president through the war department placed an order with the defendant for woolen cloth and that in conformity with such order and the three contracts made, defendant was obliged to give precedence to the government over the plaintiff's contract which necessitated the delay.

There was no dispute about these facts as appears from the above correspondence and agreements. The court refused to make these findings because it believed that the facts constituted no defense. It was of the opinion that conceding all the above facts no such order was made prior to November 24, 1917, as required the defendant to give precedence to the government under the National Defense Act.

With this conclusion we cannot agree. Section 120 of the National Defense Act (39 Stat. 213; Comp. St. 1916, sec. 3115 G) provides: " The President, in time of war or when war is imminent, is empowered, through

the head of any department of the Government, in addition to the present authorized methods of purchase or procurement, *to place an order* with any individual, firm, association, company, corporation, or organized manufacturing industry for such product or material as may be required. * * * Compliance with all such orders for products or materials shall be obligatory, * * * and shall take precedence over all other orders and contracts heretofore placed with such individual, firm, etc. * * * and any individual, firm, etc. * * * who shall refuse to give to the United States such preference in the matter of execution of orders * * * The president, through the head of any department of the Government * * * is hereby authorized to take immediate possession of any such plant or plants. * * * Any individual, firm, etc. * * * failing to comply with the provisions of this section shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment for not more than three years and by a fine not exceeding $50,000."

We do not interpret this act of Congress to mean that the government through the president or head of the war department was required in every case to issue an order directing a preference in government work. Upon placing an order for material the act gave the preference, nothing had to be said about it. The country's unpreparedness when we entered the war in April, 1917, and the necessity for haste in the manufacture of clothing, ammunition, equipment of all kind, together with ships for transportation is well known. All these were as necessary as men. Every agency acted with the utmost expedition. Time was the essence of all movements. It was paramount. The allies were continually pressing for speedy assistance. When, therefore, the government made contracts for clothing and requested through its proper army officers that delivery be made as speedily

as possible and that precedence be given over all civilian matters, these were orders which came within the spirit, purpose and meaning of this act of Congress. Power was given to the president and the heads of departments to use force where necessary and to take over plants for procuring necessary material, but this was not the first step; it was the last action to be taken and then only with those who refused to comply with the orders and demands of the government. It was a reserve power only to be used where necessary. When contracts were made or orders placed for goods, and expedition was required and demanded, the exigencies of the situation coupled with these verbal or written directions of the government officials in charge of the work made precedence obligatory under this act of Congress. It is unreasonable to suppose, when we consider the pressure under which the heads of all departments were working, that the innumerable orders given for shoes, clothes, ammunition and all equipment for the army should require a personal order from the secretary of war before civilian contracts could be stayed for government work. The order or direction from the quartermaster whose duty it was to procure the goods as speedily as possible or, as in this case, from the council of national defense, including the secretary of war, directing such a preference brings the case within the spirit and the letter of this act of Congress. In fact having the reserve power to take over plants or to imprison, a request made by the proper officials for all haste possible in deliveries would amount to the same thing as a mandate compelling a preference. The willingness and desire of a manufacturer to serve the government under such circumstances and conditions in preference to civilian trade cannot be presumed to be a mere desire to profiteer. But whether it be or not, it is the government we must think of and its necessity for preservation — it needed equipment at once and this required that all else be laid aside irrespective of the

motive of the manufacturer in complying.   The one who gave his service with alacrity under such conditions should at least be considered with as much favor as he who held back until threatened or his property commandeered.   The laggard who feared the financial results under his civilian contracts merits no encouragement. The fact that the defendant may have sought or welcomed the government work is immaterial.   The fact is the government gave it orders which had to be filled at once. The act of Congress, the necessity of the times, brooked no delay.

The correspondence in this case shows that all the insistence for haste and for preference came from the army officials in charge of the work, and the council of national defense.   It cannot be imagined that these officials were acting in behalf of the defendant and that their demands were not genuine.   It was not the defendant or its officials who created the situation.   It was the government of the United States acting through its army officers.

The undisputed facts in this case show that the government made contracts for woolens with the defendant which required the use of its looms and materials and preference in the execution of the work.   This preference was necessitated within the meaning and purpose of the above act of Congress and constituted a good defense for the delay or cancellation of the plaintiff's contracts.

Under a similar state of facts the same conclusion has been reached by the Circuit Court of Appeals, Second Circuit, in *Roxford Knitting Co.* v. *Moore & Tierney, Inc.* (265 Fed. Rep. 177).   It has also been held that where the performance of a contract is suspended by government work for a material length of time, execution of the contract is entirely excused. (*Metropolitan Water Board* v. *Dick, Kerr & Co., Ltd.*, Law Reports, Appeal Cases 1918, page 119 [House of Lords].)

Where this act of Congress applies and government work has delayed the execution of other contracts, such delay is excused at law; it is a defense to an action for a breach of contract. (*Dolan* v. *Rodgers*, 149 N. Y. 489, 493; *Metropolitan Water Board* v. *Dick, Kerr & Co., Ltd., supra; Matter of Shipton, Anderson & Co.*, L. R., 1915, 3 Kings Bench, 676; *Oakman* v. *Boyce*, 100 Mass. 477.)

The requests to find above mentioned should have been granted by the trial court, having been established by uncontradicted evidence. They constitute, for the reasons stated, a full and complete defense to the alleged breach of contract set up by the plaintiff. We, therefore, reverse the judgments below and grant a new trial, costs to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur; CHASE, J., concurs in result.

Judgments reversed, etc.