SPARKILL REALTY CORPORATION and Another, Appellants, Respondents, *v.* THE STATE OF NEW YORK, Respondent, Appellant.

Third Department, June 30, 1933.

*Henry J. Hemmens* and *Cullen & Dykman* [*William N. Dykman, Benjamin McClung, Jackson A. Dykman, Timothy J. Shea* and *Jules Haberman* of counsel], for the plaintiffs.

*John J. Bennett, Jr., Attorney-General,* and *James Gibson, Assistant Attorney-General* [*Walter H. Pollak* and *Carl S. Stern, Special Assistant Attorneys-General,* and *Arthur H. Goldberg* of counsel], for the defendant.

HILL, P. J. The judgment from which cross-appeals have been taken is founded upon the appropriation by the Palisades Interstate

Park Commission of 164 acres of land, with the structures thereon. The land is a part of the Palisades ridge, containing a large deposit of igneous rock above sea level which, when crushed, would be salable in the nearby metropolitan area. The State, in the interest of natural scenic beauty, but somewhat belatedly, appropriated the land, together with the structures thereon, after claimants had expended nearly $585,000 in developing the quarry. All of this very substantial sum, with the possible exception of comparatively trivial amounts, may be considered by a court in determining the amount of damages. The attitude of the Commissioners, as indicated by the following letter written by their attorneys to claimants' attorneys, warranted the development of the quarry with the expectation that it would not be condemned or purchased by the State: " Your letter of October 14th, together with other data and information * * * have been submitted to and considered by the Commissioners of the Palisades Interstate Park, who have requested us to report to you that at their meeting today it was decided and resolved by them that their counsel be instructed to take no steps for the condemnation of the Tallman Mountain property. The Commissioners would be glad to consider buying the property if it could be secured at a figure which they regard as reasonable, but the valuation placed upon it by your client and the Sparkill Realty Corporation cannot even furnish a basis for negotiation."

On the day following claimants' attorneys replied: " We acknowledge with thanks your letter of the 18th inst. and are very much obliged to you for informing us so promptly that you have been requested by the Commissioners of the Palisades Interstate Park to report to us that it had been decided and resolved to take no steps for the condemnation of the Tallman Mountain property. Our clients are accordingly proceeding with the plans which they had made for the development of the quarry and which have been in abeyance since the receipt of your letter of May 13, 1927."

The claimants had awaited the determination of the Commissioners to permit the purchase or condemnation of the mountain before money was expended in development. They should receive the value of the structures and quarrying facilities, also the value of the land enhanced, if such was the fact, thereby. The decision does not indicate the items of which the gross damages consist. *Banner Milling Co.* v. *State of New York* (240 N. Y. 533) is determinative of many of the issues here presented. It is there stated: " In establishing the value of the * * * property appropriated, it was competent to prove all the uses that could be made

of the property; the value of the plant, * * * the increased value, if any, which the structure so used had given to the land, and all the valuable appurtenances and availabilities of the property. To estimate the fair market value the court no doubt should have considered not only the cost of production, but also the cost necessarily or reasonably expended in bringing the mill or factory into efficient working condition, what has been called the synchronizing of its parts."

This quarry was not in operation, but the work of development had progressed sufficiently so that operations would begin in a few months. Expenditures made to this end are " all elements which should be considered in estimating the market value. * * * This does not mean, however, that the cost of these various items considered alone and by themselves must be allowed for or that the sum total of all these expenses make up the owner's compensation. The cost of production or of reproduction need not of necessity be taken part by part, and the total accepted as the amount of the award. These items like other items of cost in production or reproduction are to be considered and weighed with the other evidence of value." (Banner Milling Co. v. State of New York, supra.)

The decision and opinion of the Court of Claims indicate that in arriving at the expenditures for development they improperly considered an item representing the amount of executory contracts which had been let, but under which there was neither performance nor payment. Two of the findings show the expenditures and contract commitments made by claimants, also necessary work for which contracts had not been let at the time of the appropriation.

" 25. On October 11th, 1928, the date of the appropriation, claimant, Standard Trap Rock Corporation, had actually expended Four Hundred Eighteen Thousand Seven Hundred Fifty-nine and 25/100 Dollars ($418,759.25) and had incurred and subsequently paid for development, construction and equipment then completed and a part of the premises the sum of One Hundred Sixty-five Thousand Five Hundred One and 40/100 Dollars ($165,501.40).

" In addition to the foregoing at the date of the appropriation aforesaid, the said Standard Trap Rock Corporation had entered into contracts for the completion of its said plant and equipment on the appropriated premises, which contracts amounted to the sum of Three Hundred Forty-six Thousand Four Hundred Sixty-six and 30/100 Dollars ($346,466.30).

" 26. It would have required the further expenditure of One Hundred Fifty-seven Thousand Five Dollars ($157,005) for construction and equipment, for which no contracts had been made,

in order to fully complete and equip the quarry plant for the production of crushed stone on March 15, 1929."

Of the three items grouped in the 25th finding, the first two represent moneys paid for development of the quarry, the third is the aggregate of the expenditures to be made under all the executory contracts which claimants had made. Neither the labor nor the materials contracted were performed or delivered. The 26th finding deals with the further estimated expenditures necessary to complete the quarry, to which the third item in finding 25 is more nearly related than to those representing money paid out. From this grouping there might be uncertainty whether the court considered the $346,466.30 item as something for which claimants should be compensated. This is clarified by the opinion: "Before the appropriation, the claimant Standard Trap Rock Corporation had partially completed a plant for crushing the stone and in the construction of this plant had paid for equipment the sum of $418,759.25, had incurred unpaid obligations prior to October 11, 1928, for completed equipment in the sum of $165,501.40, and had incurred further obligations in the amount of $346,466.30 on contracts for special equipment to be manufactured and furnished, or total expenditures paid and to be paid of $930,726.95. Of this amount, the sum of $8,250.00, consisting of royalties, and $50,000.00 paid to the Rockland Light & Power Company, we think, cannot properly be considered upon the question of the value of this property.

" The value of the land must be considered."

I reach the indubitable conclusion that the court considered the contract item as a part of the total expenditures which claimants either had paid or were to pay. This is stated by implication in the last sentence of the quoted portion of the opinion: " Of this amount, [$930,726.95 in which the contract item is included], the sum of $8,250.00, consisting of royalties, and $50,000.00 paid to the Rockland Light & Power Company, we think, cannot properly be considered upon the question of the value of this property." Thus, with the two exceptions, the entire $930,726.95 was " considered upon the question of the value of this property."

The record contains no proof as to the termination of the contracts. It is argued that claimants incurred no liability by cancellation, as the quarry project was ended by an act of the sovereign power, and the contracts made impossible of performance. (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290; *Nitro P. Co.* v. *Agency of C. C. & F. Co.*, 233 id. 294; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 id. 377; *Mortimer* v. *Otto*, 206 id. 89; *Texas Co.* v. *Hogarth Shipping Co.*, 256 U. S. 619.) If such abroga-

tion did not in fact follow the appropriation by the State, the sum of money which claimants had agreed to pay in the future for labor and material to be performed and furnished did not represent their damage, rather it was the sum paid to be released, or the recoveries had against them for the breach of the contracts.

The hypothetical question asked by claimant was unobjectionable, and the experts in giving opinions on value excluded the contract item, but this does not lessen the effect of its improper consideration by the court. The evidence as to the price at which a former owner had offered to sell the land is admissible, but may have little bearing upon the question of value after its development as a quarry had proceeded so nearly to completion.

Allowance for title searches has been approved. (*Burchard* v. *State of New York*, 128 App. Div. 750; *Taggarts Paper Co.* v. *State of New York*, 187 id. 843, 849.)

Upon a new trial, in the interest of economy, it is to be hoped that much of the proof taken on the first trial may be stipulated into the new record and only such additional evidence taken as the parties may think proper to offer.

The judgment should be reversed on the law and facts, with costs, and a new trial granted in the Court of Claims.

BLISS and HEFFERNAN, JJ., concur; RHODES, J., dissents, with an opinion; CRAPSER, J., dissents and votes to affirm.

RHODES, J. (dissenting). I dissent and vote to affirm the judgment.

I think the items referred to by Presiding Justice HILL as having been erroneously considered were competent within the authority of *Banner Milling Co.* v. *State of New York* (240 N. Y. 533), cited by him. The plant was uncompleted. Findings 25 and 26 show not only what had been expended toward the plant, but the further sums which it would have been necessary to expend before the plant was ready for operation. Obviously the property was not as valuable with an uncompleted plant as it would have been with a completed and operating plant. It was proper to know how much it would cost to complete the project in order to know what the property was worth. I do not think the findings or the opinion indicate that damages were awarded for the uncompleted contracts and for the further amount of expenditure which would have been required to complete and equip the plant. The portion of the opinion of the court referred to indicates only that these items were considered by the court upon the question of the value of the property. This is further indicated by the statement of the court immediately following which is that " the value of the land must be

considered." That was what was being taken, the land or the real property. Its value was to be ascertained by considering its state of improvement with all the appropriate elements. If the record indicated that these items were awarded by the court as elements of damage, then properly the judgment should be reversed, but I do not think that conclusion is to be spelled out from the opinion or the decision of the court below.

In *Adamo* v. *State of New York* (235 App. Div. 12) this court reversed the Court of Claims and granted a new trial because in that case the Court of Claims had made a finding that claimant's property had been greatly damaged by a change of grade. Damages for change of grade were neither proper as an element of damage nor was the evidence competent as supporting claimant's claim in that case. The findings there indicated that the court had awarded damages for change of grade. Here, it seems to me the record shows only that the court has considered evidence which was proper as bearing upon the value of the property taken.

Judgment reversed, on the law and facts, and new trial granted, with costs to the defendant to abide the event.

The court reverses findings of fact numbered 25, 26 and 29 of the decision, and such findings of fact as are contained in the conclusions of law; also finding number 26 contained in claimants' proposed findings of fact.