HARRY FREUND, Plaintiff, *v.* ZEPHYR LAUNDRY MACHINERY COMPANY, Defendant.

Supreme Court, Special Term, Kings County, December 28, 1942.

*Benjamin A. Hartstein* for plaintiff.

*Henry Uttal* for defendant.

Nova, J. Plaintiff moves for an order, pursuant to rule 103 of the Rules of Civil Practice, striking out paragraphs 1 and 2 of the defendant's answer, and for an order, pursuant to rules 103, 104 and 109, striking out the first affirmative defense contained therein. Defendant, by way of counter-motion, seeks summary judgment.

The complaint alleges that plaintiff was employed under a written contract executed on or about April 21, 1941, which by its terms was to continue for three years or until April 13, 1944. The complaint also alleges that defendant employed plaintiff to handle sales of its products to New England, Washington, D. C., and the States of New York and Pennsylvania, and that under the contract plaintiff was to receive a salary of $5,000 per year with an override of two per cent commission on all sales made in the above territory by other salesmen, including the plaintiff. It is further alleged that defendant discharged plaintiff on or about April 21, 1942, without just cause or provocation.

Defendant has interposed an answer containing a first separate and distinct defense alleging that it is a corporation engaged in the manufacture, sale and distribution of laundry machinery and laundry machinery equipment and accessories, and that plaintiff was employed by the defendant as a salesman to sell its products. Further, that on or about April 18, 1942, the Government of the United States issued its General Limitation Order No. L-91 (7 Federal Register, April 21, 1942, p. 2938), which, as revised by amendment issued May 22, 1942 (7 Federal Register, May 23, 1942, p. 3853), read in part as follows:

" (b) Restrictions on Delivery. Regardless of the terms of any contract of sale or purchase or other commitment, or of any preference rating certificate, no manufacturer, distributor, or other person shall accept an order for, or sell, deliver, or otherwise transfer, and no person shall purchase, receive delivery of, or otherwise acquire, any new commercial laundry or dry cleaning machinery, or tailors' pressing machinery, of any value, or any of such kinds of rebuilt or reconditioned machinery of a value in excess of $100.00 except as follows: (1) To fill orders for the Army or Navy of the United States, the Army or Navy of Belgium, China, Czechoslovakia, Free France, Greece, Iceland, Netherlands, Norway, Poland, Russia,

Turkey, United Kingdom including its Dominions, Crown Colonies and Protectorates, or Yugoslavia; for the Maritime Commission or War Shipping Administration; or to fill orders to equip a vessel constructed for the Navy, Maritime Commission, War Shipping Administration or Lend-Lease Administration, or a cantonment or other Army or Navy base constructed for the use and operation of the Army or Navy of the United States; or to fill orders for a bag loading or other ordnance plant where the hazard is such that the above-mentioned machinery has been specified as necessary by the Army or Navy; or (2) Upon express authorization of the Director of Industry Operations upon Form PD-418.

\* \* \* \* \* \* \*

" (d) Prohibition of production of commercial laundry and dry cleaning machinery. (1) Unless otherwise authorized by the Director of Industry Operations, on and after June 1, 1942, no Manufacturer shall produce any Commercial Laundry Machinery, except to fill orders for, and in accordance with, specifications of, the Army or Navy of the United States etc.
\* \* \*

\* \* \* \* \* \* \*

" (h) Existing contracts. Fulfillment of contracts in violation of this order is prohibited regardless of whether such contracts are entered into before or after the effective date of this order. No person shall be held liable for damages or penalties for default under any contract or order which shall result directly or indirectly from his compliances with the terms of this order."

Defendant also alleges that under the terms and provisions of the aforesaid order the manufacture, sale and delivery, and transfer of, laundry machinery and laundry machinery equipment and accessories were prohibited.

No motion is addressed to the second separate defense which alleges a modification of the contract in question.

Plaintiff's objection to that part of the allegations contained in paragraphs 1 and 2 of the answer which admit execution of the contract in question, and which " respectfully asks leave to refer to the original thereof at the time of the trial for the terms and conditions thereof," is well taken. These allegations are not good pleading and should be stricken out. (*Cohalan* v. *New York World-Telegram Corp.*, 172 Misc. 1062.)

Plaintiff also challenges the sufficiency of the first affirmative defense. It may be stated that the said defense in substance pleads impossibility of performance by reason of governmental

order and on its face the defense appears to be sufficient. Its gravamen is predicated upon the fact that when the government through its sovereign power intervenes for the preservation of the country or makes performance of a contract impossible, the contracting parties are relieved of further liability. (*Mawhinney* v. *Millbrook Woolen Mills*, 231 N. Y. 290, 300, 301.) Thus, where circumstances and facts warrant it, the foregoing broad principle applies.

I come now to a consideration of the defendant's cross motion for summary judgment based upon its defense of impossibility of performance within the purview of the doctrine stated in *Mawhinney* v. *Millbrook Woolen Mills* (*supra*). In support of its motion defendant points out that the effect of order No. L-91 was to prohibit defendant from manufacturing and selling laundry machinery and plaintiff from selling the same. Plaintiff, on the other hand, categorically denies this to be the fact and alleges that the defendant's contentions are contradicted by the very language of the order itself and also by the facts to which it refers in its affidavits. Parenthetically, I might state that I am not unmindful of the applicable rule of statutory construction to be applied in construing the governmental regulations here involved, which is set forth in *Nash* v. *Southern Pacific Co.* (260 F. 280, at p. 284): "It will readily appear, I think, that this contention of the plaintiff proceeds from a failure to apprehend fully the character and scope of the Federal Control Act, and more particularly the purpose to be subserved by section 10. In the first place, the act, as expressly declared, is an emergency measure, to meet extraordinary conditions growing out of an actual state of war, and calling for an exertion of the most extreme and drastic powers of government to meet those conditions. It is accordingly to be construed, not with that meticulous nicety which might be dictated by other circumstances, but in a broad spirit of liberality, in keeping with the purpose intended to be accomplished and having in view its emergency character."

In the light of such admonition, I am of the opinion that by the terms of the limitation order the sale and delivery of laundry machinery and equipment may be made without express authorization of the Director of Industry Operations to the armies or navies of the United States, Belgium, China, Czechoslovakia, Free France, Greece, Iceland, Netherlands, Norway, Poland, Russia, Turkey, United Kingdom including its Dominions, Crown Colonies and Protectorates, Yugoslavia, as well as to the Maritime Commission or War Shipping Administration; also to fill

orders to equip vessels constructed for the Navy, Maritime Commission, War Shipping Administration, Lend-Lease Administration, cantonment or other army or navy base constructed for the use or operation of the Army or Navy of the United States.

In addition, order L-91 provides that sale and delivery may be made to any private person or corporation or to anyone upon express authorization of the Director of Industry Operations upon form PD-418. In further proof of its claim that the limitation order does not prohibit the manufacture and sale of laundry machinery, plaintiff asserts that the defendant in its dealings with only one company, now the Acme Laundry Machinery Company, made sales in excess of $16,000 between April 18, 1942, when the limitation order was enacted, and September 19, 1942; also that this represents only a part of the known orders of the defendant. Plaintiff further alleges that since the entry of the United States into the war the sales of laundry machinery and equipment to army and navy departments has exceeded by far the sales of such machinery previously made in a year to all civilian industries using such equipment. Plaintiff alleges further that during the time he was in the employ of the defendant it was engaged not only in the sale of new machinery but also used machinery; that he had sold a great deal of used machinery and that the sale of such machinery was not curtailed by the limitation order.

To controvert plaintiff's averments, defendant alleges that at the present time it is engaged in the business of manufacturing laundry machinery, but that the entire output of its plant is used for the manufacture of such machinery for the various branches of the military service of the United States in accordance with the terms of the limitation order. That the defendant is not manufacturing or selling, nor can it manufacture or sell, any machinery to the general public. Furthermore, that the sales adverted to by plaintiff as having been made were of machinery already in existence at the time of the enactment of the limitation order. That these sales were made pursuant to PD-418 orders issued by the government, and that some of the other sales set forth in plaintiff's affidavits were made to the United States Government or its agencies.

So much for the allegations contained in the various affidavits.

I am of the view that at best the foregoing controverted issues require a determination upon a trial and may not be disposed of upon a motion of this character. At common law it was well settled that what a party was bound by contract to perform he had to perform or pay damages upon his failure to do so.

This rule was somewhat abated by subsequent adjudications so that today the courts imply a condition in a contract to the effect that when the performance depends upon the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, if before the time for performance and without fault of either party the particular person or thing ceases to exist or be available for that purpose, the contract shall be dissolved and the parties excused from performing it. (*Lorillard* v. *Clyde,* 142 N. Y. 456.) There the court said, at page 462: " The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of *Paradine* v. *Jane* (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. (See *Harmony* v. *Bingham,* 12 N. Y. 99; *Ford* v. *Cotesworth,* L. R. [4 Q. B.] 134; *Jones* v. *United States,* 96 U. S. 24.) *But it is now well settled* that when performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation. Executory contracts for personal services, for the sale of specific chattels, or for the use of a building, are held to fall within this principle. (*Dexter* v. *Norton,* 47 N. Y. 62; *People* v. *Globe Mutual Ins. Co.,* 91 id. 174; *Taylor* v. *Caldwell,* 113 Eng. C. L. 826.) These cases are not exceptions to the rule that contracts voluntarily made are to be enforced, but the courts in accordance with the manifest intention construe the contract as subject to an implied condition that the person or thing shall be in existence when the time of performance arrives. *So, if after a contract is made the law interferes and makes subsequent performance impossible, the party is held to be excused.* (*Jones* v. *Judd,* 4 N. Y. 412.) " (Italics supplied.)

This rule is reiterated in the later case of *Cameron-Hawn Realty Co.* v. *City of Albany* (207 N. Y. 377). The court said, at pages 381 and 382: " It is a well-settled rule of law that a party must fulfill his contractual obligations. Fraud or mutual mistake, or the fraud of one party and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law or the interfering or pre-

ventive act of the other party may free one from the performance of it; but if what is agreed to be done is possible and lawful the obligation of performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. *It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse non-performance.* The courts will not consider the hardship or the expense or the loss to the one party or the meagreness or the uselessness of the result to the other. They will neither make nor modify contracts nor dispense with their performance. When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications. [Cases cited.] * * * There is in the nature of contracts of those classes an implied condition that if the person or thing shall not be in existence at the time stipulated for performance it shall not be required." (Italics supplied.) (See, also, *Columbus Ry. & Power Co.* v. *Columbus,* 249 U. S. 399; *Texas Co.* v. *Hogarth Shipping Co.,* 256 U. S. 619, 629, 630.) It will be observed that the opinion of the court in the *Cameron-Hawn* case lays particular stress upon the fact that where the defense is asserted of impossibility of performance it must be shown that the thing cannot by any means be effected; and, further, that nothing short of this will excuse non-performance. This latter point is also the basis of the court's decision in *Town of North Hempstead* v. *Public Service Corp.* (107 Misc. 19, affd. 192 App. Div. 924). There the defendant entered into a contract with plaintiff to maintain and operate gas mains in highways in the town of North Hempstead. The contract was entered into in June, 1912. After the United States declared war on Germany in April, 1917, the United States Government took control and supervision of steel and pipe distribution and industries in the United States and created a priorities board and a war industries board. These boards made no provision for the purchase of pipe to be laid in the town of North Hempstead. The defendant claimed that since without such provision it could not procure any pipe to lay in accordance with its contract, it was excused from performing the contract. The court in giving judgment for the plaintiff stated at pages 25 and 26: " It may be conceded that the rules and regulations of the war industries board greatly increased the difficulty, and probably the expense, of securing pipe, but the difficulty so created stands in no other or different category than if created by any other cause or unforeseen contingency, such as scarcity

of labor, strikes, increased taxation or demands in excess of the supply. The controlling consideration is that neither the acquisition nor the use of the pipe for the purpose of fulfilling the obligation assumed by the defendant was forbidden or rendered illegal by any act of ' the law.' Official action increased the difficulty of performance but imposed thereon no taint of illegality, and I am of the opinion that none of the cases hold that performance is excused by such a situation as is disclosed in this case. On the contrary, it has been held that increased difficulty and expense of performance, occasioned by a law enacted after the execution of a contract, never excuses performance. (*Baker* v. *Johnson*, 42 N. Y. 126, 131.) Whether or not an application for a priority order, if made, would have been granted or refused, or whether or not the rules and regulations at any particular time did or did not specifically provide for a priority order in such a case as this, are considerations beside the question. The important fact is that the power to grant such an order was at all times in the priorities board or the war industries board. Such action was not prohibited nor rendered illegal. If, in the exercise of a wise precaution, the defendant had previously acquired a surplus supply of pipe, the use thereof was never prohibited nor rendered illegal. Neither was the acquisition of pipe from private sources ever prohibited nor declared illegal. The performance of the requirements of the franchise was, therefore, never rendered impossible by any act of ' the law ' within the meaning of the exception to the general rule." To the same effect see also *Federal Sign System* v. *Palmer* (176 N. Y. S. 565, App. Term, 1st Dept.). This rule is also stated in a different light in *Schoelkoff* v. *Moerlbach Brewing Co.* (184 N. Y. S. 267, 269): " Where performance of a contract becomes impossible by subsequent law — by statute or by an executive or administrative order or mandate issued pursuant thereto — the party or parties may be excused from proceeding in furtherance thereof. But a mere temporary suspension of a right given or duty imposed by the contract, or a temporary interference therewith, may or may not operate to discharge or excuse performance of a particular stipulation according to the conditions and circumstances of the case, depending upon the degree of interference — whether considerable or not — substantial or not, whether the foundation of the contract is taken away or not. In other words, whether the suspension or interference is so far material or substantial that the party obligated to pay ought in justice and of right to be held discharged of his obligation."

So, in the case at bar, there is presented the issue of fact as to whether the limitation order has so affected defendant's business that the foundation of the contract with plaintiff has been taken away. This view finds support in the decision of the Court of Appeals in the *Mawhinney* case (234 N. Y. 245, 250), which came up on appeal after a second trial and after the previous decision of the court (231 N. Y. 290, *supra*) to which I have referred above. In the latter case the court held that where the testimony showed that the government contracts to some extent delayed or prevented the execution of plaintiff's contract, it still remained a question of fact for the determination of the jury whether the delay necessarily and wholly prevented performance. In any event, I might also point out that the contract entered into by the parties does not specify that plaintiff was employed only for the purpose of effecting sales for civilian needs. It may well be that such was the intention of the parties at the time they executed the contract, but no such limitation is contained in the language of the contract itself. This fact to my mind has an important bearing upon the issues involved for it may develop upon the trial that plaintiff could have fulfilled his obligation on the contract by soliciting orders from the various governmental agencies including Lend-Lease, Maritime Commission, War Shipping Administration, etc.

In view of the foregoing, both plaintiff's motion to strike out the first defense and defendant's motion for summary judgment are denied. Settle orders on notice.