AMERICAN STORE EQUIPMENT AND CONSTRUCTION CORPORATION, Plaintiff, *v.* BUFFALO MUNICIPAL HOUSING AUTHORITY, Defendant.

Supreme Court, Special Term, Erie County, March 28, 1952.

*David Diamond* for plaintiff.

*Fred C. Maloney, Corporation Counsel (Samuel Blinkoff* of counsel), for defendant.

WILLIAMS, J. The case was presented to the court without a jury under a written stipulation which contained most of the material facts.

It appears that the plaintiff is a Michigan corporation and the defendant is a public corporation organized and existing under the laws of the State of New York with its principal place of business in the city hall, Buffalo, New York. On December 10, 1942, plaintiff and defendant entered into a contract for the construction by the plaintiff of a war housing project in Buffalo, known as the Willert Park Extension. Under the

contract the plaintiff was to receive $1,249,000 for the performance of the contract. During the course of construction under the contract and on or about February 9, 1943, the President of the United States of America issued Executive Order No. 9301 which was directed toward a fuller utilization of available manpower in certain critical labor areas and the general purport of which was to require that in certain areas and on certain projects the minimum work week be increased from forty to forty-eight hours.

## 1. EXECUTIVE ORDER 9301

By virtue of the authority vested in me by the Constitution and statutes, as President of the United States, and in order to meet the manpower requirements of our armed forces and our expanding war production program by a fuller utilization of our available manpower, it is hereby ordered:

1. For the duration of the war, no plant, factory, or other place of employment shall be deemed to be making the most effective utilization of its manpower if the minimum work week therein is less than 48 hours per week.

2. All departments and agencies of the Federal Government shall require their contractors to comply with the minimum work week prescribed in this order and with policies, directives, and regulations prescribed hereunder, and shall promptly take such action as may be necessary for that purpose.

3. The Chairman of the War Manpower Commission shall determine all questions of interpretation and application arising under this order and shall formulate and issue such policies, directives, and regulations as he determines to be necessary to carry out this order and to effectuate its purposes. The Chairman of the War Manpower Commission is authorized to establish a minimum work week greater or less than that established in section 1 of this order or take other action with respect to any case or type of case in which he determines that such different minimum workweek or other action would more effectively contribute to the war effort and promote the purposes of this order.

4. All departments and agencies of the Federal Government shall comply with such policies, directives, and regulations as the Chairman of the War Manpower Commission shall prescribe pursuant to this order, and shall so utilize their facilities, services, and personnel, and take such action under authority vested in them by law, as the Chairman determines to be necessary to effectuate the purposes of this order and promote compliance with its provisions.

5. Nothing in this order shall be construed as superseding or in conflict with any Federal, State or local law limiting hours of work or with the provisions of any individual or collective bargaining agreement with respect to rates of pay for hours worked in excess of the agreed or customary workweek, nor shall this order be construed as superseding or modifying any provision of the Fair Labor Standards Act (Act of June 25, 1938; 52 Stat. 1060; 29 U. S. C. 201 *et seq.*) or any other Federal, State, or local law relating to the payment of wages or overtime. (Code of Fed. Reg., Cum. Supp., tit. 3, ch. II, p. 1253.)

Thereafter, the plaintiff increased its minimum work week from forty to forty-eight hours per week with a resulting increase in labor costs of $43,000 due to overtime payments of time and one-half for the extra eight hours per week. This sum has not been paid to the plaintiff although demanded from the defendant. On August 20, 1948, the parties executed an agreement which released the defendant from all claims of the plaintiff, except the amount herein involved. The construction contract of the parties contained, among other things, the following provisions:

50. WAGE RATES. (A) The Contractor and each subcontractor shall pay to all architects, technical engineers, draftsmen, technicians, laborers and mechanics, engaged under this contract in work on or about the site of the project, not less than the wages or fees prevailing in the locality of the Local Authority, as determined under Section 152 of the Public Housing Law.

(B) A statement of all wages or fees so determined and all authorized deductions, if any, from unpaid wages or fees actually earned and the hours of work established pursuant to the provisions of Section 51, shall be posted at appropriate conspicuous points on the site of the Project. If any Contractor or subcontractor finds it necessary or desirable to exceed the wage rates specified, any expense incurred by the Contractor or subcontractor because of payment of wages in excess of those specified, shall not be cause for any increase in the amount payable under this Contract. The Local Authority will not consider any claim for additional compensation made by the Contractor or any subcontractor because of such payments.

51. HOURS OF WORK. No laborer, workman or mechanic in the employ of the Contractor, subcontractor or other person doing or contracting to do the whole or a part of the work contemplated by the contract shall be permitted or required to work more than eight (8) hours in any one calendar day, nor more than five (5) days in any one week, except in the case of extraordinary emergency, including fire, flood or danger to life or property or in a case of national emergency when so proclaimed by The President of the United States of America. No such person shall be so employed more than eight (8) hours in any one day or more than five (5) days in any one week except in such emergency. In the event of such proclamation of a national emergency by the President, application for dispensation from the provisions of this section must be made pursuant to the provisions of the War Emergency Dispensation Act of 1942, and such dispensation granted pursuant thereto before any laborer, workman or mechanic may be employed beyond the hours specified. Nor shall architects, technical engineers, draftsmen or technicians employed on a salary or time basis be permitted to work more than forty (40) hours per week unless such employees be paid at the rate of time and half for hours of work in excess of the limits prescribed above. The limitations herein set forth shall not apply to executives, supervisory and administrative employees as such.

All of the above facts appear from the written stipulation of the parties.

After such written stipulation and prior to the final submission of the case, the defendant stipulated in open court that during the entire period in which the said amount of $43,000 was incurred and expended by the plaintiff, the City of Buffalo was in " a critical labor area " as defined in said Executive Order 9301.

In addition to the main question involved as to whether the plaintiff is entitled to recover, there is also a dispute as to whether the recovery, if any, should bear interest and if so, from what date. This latter question was submitted to the court for determination as a disputed question of fact and law.

Both parties have conceded their inability to find authority precisely bearing upon the question involved. They both say that it is a case of first impression. Independent research has failed to produce precedent upon the precise point although cases in this State which will be considered hereafter have been found and seem to have some bearing.

The plaintiff's claim seems to be that its loss was one not contemplated in the contract nor which could reasonably be foreseen because of the unique type of the executive order and its conditions and effect, and that if the defendant is not obliged to pay the amount involved, the defendant will have become unjustly enriched at the expense of plaintiff.

The plaintiff takes the position that it was forced by this executive order, which was beyond its control and anticipation, to increase its work week with the resultant additional expenditures. Plaintiff further claims that it had no alternative but to follow the order, not only because it was forced to do so by law but that, as a matter of practical necessity, it had to give its employees a forty-eight hour work week from a competitive standpoint, to procure the necessary labor to complete the contract.

Most of the cases cited by the plaintiff, not as controlling, but to assist in analyzing the rights and liabilities of the respective parties, are cases against the United States Government based on this executive order or on somewhat similar emergency governmental orders or statutes. In some of these cases, awards have been made and in others denied, but in all of the cases where awards have been made, they have been based on the distinct agreement on the part of the Government to reimburse for additional expenditures, or there has been contained in the law or order under which the claims were made, provisions permitting reimbursement to the contractors for the amounts involved. The cases thus cited are: *Beuttas* v. *United States*

(60 F. Supp. 771); *LeVeque* v. *United States* (96 U. S. Ct. Cl. 250); *Blair* v. *United States* (99 U. S. Ct. Cl. 71); *Cauldwell-Wingate Co.* v. *State of New York* (276 N. Y. 365); *Borough Constr. Co.* v. *City of New York* (200 N. Y. 149); *Clemmer Constr. Co.* v. *United States* (71 F. Supp. 917); *C. B. Ross Co.* v. *United States* (74 F. Supp. 420); *Alger-Rau, Inc.,* v. *United States* (75 F. Supp. 246); *E. & F. Constr. Co.* v. *United States* (75 F. Supp. 460, 461), and *Johnson Contr. Corp.* v. *United States* (98 F. Supp. 154).

It should be borne in mind that this defendant is not a Federal department or agency but is a public corporation of this State and is subject to the New York State Public Housing Law. True, it receives financial assistance from the Federal Government which it has the obligation to repay but the Federal Government had no general control over this corporation nor was it subject to its orders and directions except in limited respects, in relation to Federal loans.

The defendant had no part in the enactment of the executive order and was in no position to resist or control its issuance. It simply was a party to a contract that may or may not have been somewhat affected by the order without any cause or influence of the defendant.

The defendant calls attention to the provisions of sections 50 and 51 of the contract, above quoted, and to the statements contained therein referring to wages, hours, overtime and increased costs, and particularly to the provision in said paragraph section 50 " If any contractor or subcontractor finds it necessary or desirable to exceed the wage rates specified, any expense incurred by the contractor or subcontractor because of payment of wages in excess of those specified, shall not be cause for any increase in the amount payable under this contract."

The provisions of section 51 state that no employees shall be permitted or required to work more than eight hours a day or more than five days a week " except in case of extraordinary emergency * * * or in a case of national emergency when so prescribed by the President of the United States of America."

Thus, the parties at the time the contract was signed contemplated, and contracted in relation to, a proclamation of a national emergency increasing the scope of the work week and agreed that if the work week should be so increased, time and one-half should be paid for hours in excess of eight a day or forty a week with no consequent increase in the flat contract rate.

It should be borne in mind that this contract was signed on December 10, 1942, a full year after Pearl Harbor when the

country was actually in peril and in an actual state of emergency whether so declared by the President or not, and the provisions we have referred to in sections 50 and 51 were probably inserted with a view to the very situation which subsequently occurred upon the issuance of said Executive Order 9301. The executive order was signed slightly more than two months after the execution of the contract.

The plaintiff contends that these sections do not show that the parties contemplated, anticipated or foresaw the executive order and its effect because the contract refers to " wage rates " (§ 50), and not to overtime pay and it is contended that the plaintiff paid wages at the original rates specified but had to pay time and one-half because of extra hours and not because of increased rates. Such an argument might be given consideration if we were interpreting a wage or labor contract as between employers and employees, but certainly such technical reasoning cannot be employed in an effort to show that the parties to this contract had no thought of the possibility of overtime pay, particularly when that subject is covered in the very next section (§ 51).

However, even though it is clear that the parties contemplated and contracted for the situation that arose, there could be no recovery had they not so contemplated and contracted. Merely because a contract has become increasingly difficult and expensive to perform due to a law enacted after its execution does not excuse performance (*Freund* v. *Zephyr Laundry Mach. Co.*, 180 Misc. 249; *Town of North Hempstead* v. *Public Service Corp.*, 107 Misc. 19, affd. 192 App. Div. 924).

In the *Freund* case (*supra*) the passage of emergency manufacturing restrictions by the United States of America made the contract difficult and increasingly expensive to perform. The court said (p. 255), quoting and approving language from *Lorillard* v. *Clyde* (142 N. Y. 456) : " ' The general doctrine that when a party voluntarily undertakes to do a thing, without qualification, performance is not excused because by inevitable accident or other contingency not foreseen, it becomes impossible for him to do the act or thing which he agreed to do, is well settled. This doctrine protects the integrity of contracts, and one of the reasons assigned in its support in the early case of *Paradine* v. *Jane* (Aleyn Rep. 26) is that as against such contingencies the party could have provided by his contract. (See *Harmony* v. *Bingham,* 12 N. Y. 99; *Ford* v. *Cotesworth,* L. R. [4 Q. B.] 134; *Jones* v. *United States,* 96 U. S. 24.)' "

The court further stated (pp. 255–256): "This rule is reiterated in the later case of *Cameron-Hawn Realty Co.* v. *City of Albany* (207 N. Y. 377). The court said, at pages 381 and 382: 'It is a well-settled rule of law that a party must fulfill his contractual obligations. Fraud or mutual mistake, or the fraud of one party and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law or the interfering or preventive act of the other party may free one from the performance of it; but if what is agreed to be done is possible and lawful the obligation of performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. *It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse non-performance.* The courts will not consider the hardship or the expense or the loss to the one party or the meagreness or the uselessness of the result to the other. They will neither make nor modify contracts nor dispense with their performance. When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications.' " (Italics not ours.)

And in the *Town of North Hempstead* case (*supra,* p. 25), the court said: " It may be conceded that the rules and regulations of the war industries board greatly increased the difficulty, and probably the expense, of securing pipe, but the difficulty so created stands in no other or different category than if created by any other cause or unforeseen contingency, such as scarcity of labor, strikes, increased taxation or demands in excess of the supply. The controlling consideration is that neither the acquisition nor the use of the pipe for the purpose of fulfilling the obligation assumed by the defendant was forbidden or rendered illegal by any act of ' the law.' Official action increased the difficulty of performance but imposed thereon no taint of illegality, and I am of the opinion that none of the cases hold that performance is excused by such a situation as is disclosed in this case. On the contrary, it has been held that increased difficulty and expense of performance, occasioned by a law enacted after the execution of a contract, never excuses performance. *Baker* v. *Johnson,* 42 N. Y. 126, 131."

There is some question as to whether the plaintiff was obliged to comply with the executive order. The plaintiff at first took the position that its necessity of compliance was practical, if

not legal, but later urged that it was also required to comply by law. However, it seems that it is immaterial which factor required compliance. Necessity for compliance, whether because of requirement of law, because of moral or patriotic reasons, or because of practical necessity, has no bearing upon the questions here involved.

It is my opinion that the plaintiff has failed to make out a cause of action and that the fourth cause of action of the complaint must be dismissed.

In view of this, the question concerning interest has become academic as have defendant's motions to strike out plaintiff's Exhibits 1 and 2.

Present findings.