W. K. EWING COMPANY, INCORPORATED, Respondent, *v.* NEW YORK STATE TEACHERS' RETIREMENT SYSTEM, Appellant.

Third Department, August 1, 1961.

*Charles A. Brind* for appellant.

*Charles E. Nichols* of counsel (*Whalen, McNamee, Creble & Nichols,* attorneys), for respondent.

BERGAN, P. J. Plaintiff sues on a contract to service a mortgage held by defendant on property in Texas. By the terms of the service agreement plaintiff undertook to collect monthly payments of interest, escrow deposits, reserves for replacements, to "do all that is necessary" to see to it that the buildings were covered by fire and other insurance, to ascertain periodically the taxes due on the premises, and to remit money from the plaintiff to officials or persons to whom it might be due.

The fee title to the land was in the United States Government; but the mortgage held by defendant was on improvements on the land, and executed by the Government's lessee, a private corporation which had constructed housing facilities for the Air Force. Defendant had loaned $5,000,000 for this purpose, secured by the mortgage. The servicing agreement with the plaintiff, a Texas corporation, was executed March 10, 1952.

The agreement provided means by which the servicing contract could be cancelled on election of the defendant, in which event an obligation by defendant to pay under its terms would run for a stated period in the future; but although the effect of this right of cancellation as provided by the contract was considered by the Special Term; and although in part defendant seemed to have relied on it in its correspondence with plaintiff, it is now clear from the form of defendant's pleading and from the affidavit on defendant's motion for summary judgment and exhibits attached to it, that the basic defense to the action must depend on the defendant's right to treat the agreement as having been terminated by operation of law rather than by the exercise of the specific right to cancellation under the terms of the contract.

Although we are of opinion that the Special Term was correct in holding that the specific provision governing an election by the defendant to cancel under the conditions therein reserved did not itself authorize cancellation, we think that the contract has been cancelled on broader grounds than those in this provision and by operation of law.

It is conceded that on April 1, 1958 the United States purchased the property from the private mortgagor; and that thereupon the obligation to pay passed to the United States which assumed the obligation. This purchase was in pursuance of statute, section 404 of the Housing Amendments of 1955, by section 512 of Public Law 1020, 84th Congress (70 U. S. Stat. 1111; U. S. Code, tit. 42, § 1594a).

It has already been noted that the United States owned the basic fee title to the land. This acquisition of the improvements was an act of public intervention and in accordance with statutory authority, over which the mortgagee had no control; and, indeed, defendant's consent was neither asked nor necessary. The United States took over the obligation of the mortgage which the defendant held on the improvements. All possible need for the services of the plaintiff, under the agreement, by receiving monthly payments of principal and interest, or by

seeing to it that local taxes were paid or that insurance was on the buildings, terminated.

The United States had become the direct obligee on the mortgage and responsible for its liquidation, and plaintiff's services, intended to check locally on a private borrower, and appropriate enough in such a case, no longer had value or significance. The credit of the United States now stood behind the loan; fire insurance was no longer necessary and the need to pay local taxes was at an end. All effective part that plaintiff might play in servicing this indebtedness had now disappeared.

Defendant made an appropriate agreement with the United States by which the obligation of the mortgage was to be liquidated by the Government; but the significant change in the need to service the mortgage was not the result of this implementing agreement; it was due, rather, to the substitution of the United States as the obligee by an act of sovereign power and in pursuance of a public law.

In our view the contract for servicing the mortgage was at an end; and it is a fair evaluation of the intention of the parties and by necessary implication, that it was to be at an end in the event of the happening of such a contingency as this. There is implicit in an executory contract of this sort such a continuance of the entities and of the subject matter dealt with as to allow the possibility of performance (*Stewart* v. *Stone,* 127 N. Y. 500, 507; *Lorillard* v. *Clyde,* 142 N. Y. 456, 462).

These cases, of course, involved the physical continuance of the property involved (*Stewart*) and the legal continuance of a corporate entity (*Lorillard*); but it is clear that the disappearance of an entity is not the only kind of impossibility which might stand in way of performance. Intangible facts may also be an essential means or basis for performance (6 Williston, Contracts [rev. ed.], § 1951). The intervention of public power is one common basis excusing performance for impossibility (*Jackson & Co.* v. *Royal Norwegian Gov.,* 177 F. 2d 694; *Freund* v. *Zephyr Laundry Mach. Co.,* 180 Misc. 249, affd. 266 App. Div. 734). We think the intervention of the United States to take up the title of and the obligation related to the improvements on its own land rendered at once the contractual engagement of the plaintiff to the defendant useless and, within the spirit of these decisions and of the policy on which they are based, impossible in contemplation of law.

Moreover, we think that it was implicit in this agreement that if the obligation was assumed by public authority and

the need for servicing no longer extant, it would terminate. Not only was it known to both parties that the United States owned the fee to the land and that the improvements were financed with governmental co-operation and in connection with the development of conveniences for military personnel, but other language in the agreement suggested that when, for reasons over which defendant had no control, the property might not need the supervising services of the plaintiff on the scene, the obligation of defendant would come to an end.

Thus it was provided that if there was such a default by the mortgagor on the obligation to pay principal or interest " so as to give " the defendant " the right to foreclose " and it " liquidates the indebtedness by foreclosure or otherwise " then " this agreement shall be automatically terminated, without notice ". Here was envisioned one instance when there would be no need for further servicing because of a change in conditions over which defendant would have no control.

Hence it seems reasonable to think that there were circumstances in contemplation of the parties when radical relocation of the obligation which was the subject of the servicing agreement would end the need for service and relieve plaintiff of the undertaking to perform the service; and defendant of the duty to pay for it.

We think that the contract, within the contemplation of the parties, is at an end; and that summary judgment ought to be rendered for the defendant.

The order and judgment should be reversed and defendant's motion for summary judgment granted, with costs.

TAYLOR, J. (dissenting). The execution of the tri-party agreement, upon which the defendant relied to vitiate the employment contract, was neither mandated by the provisions of the so-called Wherry Act nor legally excusable because of the existence of a national emergency and no claim to the contrary is made. After the agreement was received by appellant, it communicated with an official of the Air Force who advised that the failure to establish the proposed new contractual relationship which, in large part, was designed to extinguish the need for plaintiff's services would result in the withholding of the future payments provided by the subsisting mortgage, all of whose obligations concededly the Federal Government had assumed in part payment of the purchase price of the subject property. This is the basis assigned in justification of defendant's consent to the modification of the original mortgage instrument with its fatal consequence to plaintiff's ability to perform the employment

contract. While the threatened governmental action foreboded probable payment enforcement difficulty, it was idle in the eye of the law. In my view the execution of the tendered agreement which must be regarded as voluntary in a legal sense is not the sort of incapacitation of plaintiff which the parties to the employment contract envisaged or the law sanctions as a ground for the exercise of the option to terminate it. (*Matter of Casualty Co. of America [Bliss Co. Claim]*, 250 N. Y. 410; *Patterson* v. *Meyerhofer*, 204 N. Y. 96; *Dolan* v. *Rodgers*, 149 N. Y. 489.)

GIBSON and REYNOLDS, JJ., concur with BERGAN, P. J.; TAYLOR, J., dissents and votes to affirm in memorandum.

Order and judgment reversed and defendant's motion for summary judgment granted, with costs.