**CLEMMER CONST. CO., Inc., v. UNITED STATES.**

No. 47576.

Court of Claims.

June 2, 1947.

C. B. McDowell, Jr., of Akron, Ohio (Brouse, McDowell, May, Bierce & Wortman, of Akron, Ohio, on the brief), for plaintiff.

John R. Franklin, Jr., of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and MADDEN, JONES, WHITAKER and LITTLETON, Judges.

MADDEN, Judge.

The Government has demurred to the plaintiff's petition. According to the petition, the plaintiff, after competitive bidding, was awarded a contract for the erection of a war housing project at Akron, Ohio. The project was to contain 90 buildings, with 500 apartment units. The contract was dated February 6, 1943, and the plaintiff's compensation was to be two fixed sums, one for labor and one for materials. The Government's invitation for bids, and the contract, when signed, specified the wage rates to be paid on the contract, and the contract required that time and one-half be paid for work in excess of 40 hours per week.

The petition says that on February 9, 1943, the President of the United States issued Executive Order Feb. 9, 1943, No. 9301, the full text of which is given in a

footnote.[1] Its effect was to fix a minimum work week of 48 hours for the duration of the war, to direct all agencies of the Federal Government to require their contractors to comply with the order, and with the further directives of the Chairman of the War Manpower Commission pursuant to the Executive Order. Section 5 of the Executive Order said that it should not be construed as superseding any statute or contract requiring the payment of overtime after a specified number of hours worked in a week.

The War Manpower Commission specified the Akron, Ohio, area as one in which the 48 hour week should be worked, commencing April 1, 1943. The Government's contracting officer, who had signed the contract with the plaintiff, notified the plaintiff that it must comply with the orders described above. The plaintiff protested because the payment of time and one-half for the eight hours of work in excess of 40 hours would increase its costs. In computing its bid for the contract the plaintiff anticipated a 40 hour work week with no overtime requiring premium pay. The plaintiff, however, complied with the orders fixing a 48 hour work week and the additional cost of compliance was $40,459.68, for which the plaintiff sues.

The petition also says that the complete control of the allocation, purchase and use of the materials and supplies necessary to complete the contract was vested in the United States, by virtue of certain statutes; that it bid upon and entered into the contract relying on its ability to purchase the necessary supplies in the open market; that it was issued a priority rating of "A. A. 3", which was not sufficiently high to enable it to secure its required lumber and fibre board from wholesale dealers in the regular way; that it repeatedly requested the contracting officer to obtain a higher priority rating for the project, but that that officer failed to do so. The petition says that because of its low priority rating it had to purchase lumber and fibre board in small quantities from retainers and haul them to the project, at an additional cost of $9,190.17.

---

[1] "By virtue of the authority vested in me by the Constitution and statutes, as President of the United States, and in order to meet the manpower requirements of our armed forces and our expanding war production program by a fuller utilization of our available manpower, it is hereby ordered:

"1. For the duration of the war, no plant, factory, or other place of employment shall be deemed to be making the most effective utilization of its manpower if the minimum workweek therein is less than 48 hours per week.

"2. All departments and agencies of the Federal Government shall require their contractors to comply with the minimum workweek prescribed in this order and with policies, directives, and regulations prescribed hereunder, and shall promptly take such action as may be necessary for that purpose.

"3. The Chairman of the War Manpower Commission shall determine all questions of interpretation and application arising under this order and shall formulate and issue such policies, directives, and regulations as he determines to be necessary to carry out this order and to effectuate its purposes. The Chairman of the War Manpower Commission is authorized to establish a minimum workweek greater or less than that established in Section 1 of this order or take other action with respect to any case or type of case in which he determines that such different minimum workweek or other action would more effectively contribute to the war effort and promote the purposes of this order.

"4. All departments and agencies of the Federal Government shall comply with such policies, directives, and regulations as the Chairman of the War Manpower Commission shall prescribe pursuant to this order, and shall so utilize their facilities, services, and personnel, and take such action under authority vested in them by law, as the Chairman determines to be necessary to effectuate the purposes of this order and promote compliance with its provisions.

"5. Nothing in this order shall be construed as superseding or in conflict with any Federal, State, or local law limiting hours of work or with the provisions of any individual or collective bargaining agreement with respect to rates of pay for hours worked in excess of the agreed or customary workweek, nor shall this order be construed as suspending or modifying any provision of the Fair Labor Standards Act (Act of June 25, 1938; 52 Stat. 1060; 29 U.S.C. 201, et seq. [29 U.S.C.A. § 201 et seq.]) or any other Federal, State or local law relating to the payment of wages or overtime."

The plaintiff says that the United States, by its conduct in regard to the minimum work week, and the priority rating of materials, violated its implied obligation in the contract not to do anything to make more burdensome or expensive the performance of the contract by the plaintiff. It says that it protested these matters to the contracting officer, who ruled against the plaintiff, and that, under Article 15 of the contract, it appealed in writing to the head of the department, which affirmed this adverse ruling. It says that both these decisions were "arbitrary, erroneous, unfair and contrary to law and constituted the taking of property without due process of law."

The full text of the contract is attached to the petition as an exhibit.

The Government's demurrer is based upon the proposition that the acts of the Government which are alleged to have harmed the plaintiff are acts done by the Government in its sovereign capacity, rather than in its capacity as a contractor.

The Government invokes the ruling of the Supreme Court in Horowitz v. United States, 267 U.S. 458, 45 S.Ct. 344, 69 L.Ed. 736, and the decisions of this court in the early cases of Deming v. United States, 1 Ct.Cl. 190, and Jones v. United States, 1 Ct. Cl. 383, to the effect that no action lay for such conduct of the Government. It also cites our recent decisions in Gothwaite v. United States, 102 Ct.Cl. 400; Standard Accident Insurance Co. v. United States, 59 F.Supp. 407, 103 Ct.Cl. 607, certiorari denied 326 U.S. 729, 66 S.Ct. 37, 90 L.Ed. 434; Barbour & Sons v. United States, 63 F.Supp. 349, 104 Ct.Cl. 360, and Hallman et al. v. United States, 68 F.Supp. 204, 107 Ct.Cl. 555.

We think that the Government's defense is valid. The President's Executive Order No. 9301 relating to the work week was applied by the War Manpower Commission to some 150 areas within the United States. We suppose that so many areas, of which Akron was one, would include all of the areas of industrial importance in the country. There was, then, no lack of generality in its application. It was law for those parts of the country where such law was needed or useful. The plaintiff and no doubt many others who had contracts with governments or private enterprises were harmed by it. Persons are frequently subjected to increased costs by regulatory laws. But, under the doctrine asserted here by the Government, and now apparently well settled, the Government is not liable for such harms.

The same observations apply to the plaintiff's difficulties about priorities. The application of a system of priorities in the uses to which materials could be put in wartime was a necessary and sovereign act of the Government which, no doubt, harmed countless persons, who, like the plaintiff, have no right to recover for their harms.

The plaintiff's allegation that the decisions of the Government officers on its claim were arbitrary and unfair are mere conclusions which are not borne out by the allegations of fact in its petition.

The plaintiff, in its brief, points to Section 27 of the General Conditions of its contract, which said: If any sales tax, processing tax, adjustment charge, or other taxes or charges are imposed or charged by the Congress after the date stated in this contract, and made applicable directly upon the production, manufacture or sale of the supplies covered by this contract, and are paid by the Contractor * * *, then the prices named in this contract will be increased * * *.

The plaintiff urges that, because Congress had authorized the President to issue Executive orders such as the ones here in question, the contract required that the additional costs resulting therefrom be added to the contract price. We think that the quoted section of the contract was not applicable. Apart from the question of whether this was an action of Congress, within the meaning of the contract, we think it cannot be said that any additional charges were imposed and were made "applicable directly" upon the production, manufacture or sale of the supplies covered by the contract. The additional labor cost, if any, would result from the Executive order only if a contractor had planned to work only 40 hours a week and then

only if, as would be unlikely in an area of critical labor shortage, he could obtain and hold a labor force on that basis when his competitors for the scarce labor would be offering 40 percent more take-home pay for 20 percent more hours' work.

■ As to the priorities question, we think that the additional cost of hunting around and finding a dealer who had materials which he could sell on the priority which the customer held would be much too indirect and indefinite an additional cost to come within the quoted section of the contract. We think the section applied only to definite, fixed, and directly applicable legal charges.

The plaintiff in its brief refers to Executive Order 9001 issued by the President on December 27, 1941, authorizing the War Department, the Navy Department, and the Maritime Commission to amend or modify existing contracts, without consideration, when in their judgment the prosecution of the war would be thereby facilitated. It says that by Executive Order No. 9116 issued on March 30, 1942, the provisions of Executive Order 9001 were extended to the National Housing Agency, the department which contracted with the plaintiff. It says that the War and Navy Departments adopted a policy embodied in a statement quoted by the plaintiff, citing Prentice-Hall Government Contract, Par. 50,422, that where the application of Executive Order 9301, the work week order, had increased costs and thus worked a hardship to lump sum contractors, the departments would "give consideration in appropriate cases to granting relief from such hardship." The statement concluded: Generally speaking, it will be regarded that hardship exists only in cases where the increase in the cost of performance of a War Department or Navy Department contract resulting from compliance with the Order and the Regulations operates to deprive the contractor of a fair profit on the contract.

From the allegations of the plaintiff's petition we cannot determine whether the plaintiff would have been entitled to consideration with a view to relief, if its contract had been with the War or Navy Department. We do not, then, have a situation where one department is alleged to have acted less equitably or generously in the exercise of its discretion than another department acted; hence we express no opinion upon this question.

The defendant's demurrer is sustained, and the petition is dismissed. It is so ordered.

JONES, WHITAKER, and LITTLTON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.