**C. B. ROSS CO., Inc., v. UNITED STATES.**

No. 46204.

Court of Claims.

Dec. 1, 1947.

David Morgulas, of New York City (M. Carl Levine and Morgulas & Foreman, all of New York City, on the brief), for plaintiff.

E. Leo Backus, of Washington, D. C., and Peyton Ford, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

This is a suit to recover overtime premium pay disbursed by the plaintiff and several of its subcontractors to their workmen for work performed on Saturdays and Sundays. The plaintiff made a contract, dated December 16, 1942 with the United States, which was represented by the Alley Dwelling Authority, later renamed the National Capital Housing Authority. For a lumpsum price of $1,368,000 the plaintiff agreed to construct the Lily Ponds Housing Project in Washington, D. C. The time for performance was 150 days from the date on which the plaintiff would be notified to commence work. The completion date, as postponed by several change orders, became September 11, 1943.

The work was begun about January 1, 1943. On February 9, 1943, the President issued Executive Order No. 9301, 29 U.S.C. A. § 207 note, which is quoted in finding 9, and which required that a workweek of at least 48 hours be worked in order to fully utilize the country's manpower. As shown in our findings, the plaintiff and its subcontractors had, as was customary in the building industry, been working a five-day, forty-hour week. The contract here in question contemplated such a workweek since it required that time and one-half be paid workmen for all time worked in excess of eight hours in any one day, Monday through Friday, and for all time worked on Saturday or Sunday.

As required by the Executive Order, the plaintiff and its subcontractors were advised that they were expected to comply with the order. The plaintiff requested that it should be reimbursed for the premium pay it would have to pay its workmen, under its contract with the Government, for their additional hours of work. On May 25, 1943, the Contracting Officer wrote the plaintiff that he had been authorized by the Federal Public Housing Authority, which was the superior Government agency of which the Alley Dwelling Authority was an agent, "to consider claims submitted by lump-sum contractors who in good faith submitted bids based on a 40-hour week, on certain terms and conditions. The letter stated the terms and conditions, the ones relevant here being (1) that the contractor prove that it had, in fact, based its bid on a 40-hour week, (2) that the contractor could, at its current rate of progress, complete the contract by working only forty hours per week, and (3) that the contractor agree, in writing, to shorten the time of performance on an equitable basis proportionate to the extra compensation which he claimed for working a longer workweek. The letter also said that the maximum adjustment in any case would be only the amount of the premium pay less all possible savings available to the contractor. By this last statement it was meant that the contractor should give the Government credit for whatever savings it might make in reduced overhead, machinery rental, or other items.

The plaintiff completed the work, and it was accepted by the Government on September 11, 1943, the day on which the contract time, as extended by change orders,

expired. However, the Government had accepted buildings for partial occupancy as follows: 4 on June 14, 7 on June 22, 83 between June 29 and August 5, and the rest of the 500 by the end of August, all in 1943.

The plaintiff, claiming that it had complied with the conditions set forth in the Government's letter of May 25, referred to above, presented a claim on June 25, 1943, for reimbursement for premium pay. On October 27, 1943, after the completion of the work, it submitted a completed claim for such reimbursement, of $20,341.63, and offered a credit of $1,094.45 for savings accruing to it from the shortening of the work period, and also offered a reduction in the time of performance of 16 days. In further correspondence the Government took the position that the plaintiff had not complied with the conditions set in the letter of May 25, saying that the plaintiff had not "shown that the Government benefitted materially by the extra work, and that construction time was shortened." On April 19, 1944, there was forwarded to the plaintiff a copy of the ruling of the Regional Director of the Federal Public Housing Authority, denying the plaintiff's claim on the grounds (1) that the plaintiff could not have completed its work within the contract time without working a 48-hour week, and (2) that the contractor was obliged to comply with the Executive Order here in question, without compensation for its losses in doing so, because the order was issued by the Government in its sovereign capacity.

We have recently held that a lump sum contractor, put to additional expense by the President's order here in question, was not entitled to reimbursement, since the order was a general, sovereign act of the Government which acted upon all enterprises and contractors, whether they were dealing with the Government or not. It, like many laws, might increase the cost of performance of contracts, but that fact alone, we held, did not entitle a contractor with the Government, to compensation for that extra expense. Clemmer Construction Co., Inc., v. United States, 71 F.Supp. 917, 108 Ct.Cl. 718.

The plaintiff here, however, claims that the Government agreed to compensate it. The Government concedes that the Government agency which made the contract had the power to agree to reimburse the plaintiff, but says that it did not so agree, but only offered to do so if the plaintiff would satisfy certain conditions which, it says the plaintiff did not do. We think the plaintiff did satisfy the conditions. The only one seriously in question is the one with regard to shortening the time of performance. While it is impossible to determine with exactness just how much time the plaintiff was entitled to for completion of the contract, the Government has caused this situation by its failure to do what the contract required of it. The contract provided that if performance was delayed by certain events, the plaintiff would be entitled to an extension of time. The plaintiff, early in the performance of the contract, made requests for such extensions. The plaintiff was told that all extensions to which it was entitled would be granted, and supposed that extensions not passed upon either favorably or adversely at the time requested would be passed upon at or near the time of completion of the contract, when it would be known how much time was needed. We know from observing the Government's practice in other cases, that requests for extensions are sometimes handled in that way.

In the course of performance, several change orders involving extensive changes in the work were made, and extensions of time of 19 days, 48 days, 30 days, and 10 days were included in these change orders. These extensions carried the completion date to September 11, 1943. Before that time the Government had accepted all the buildings, the last of them by August 31. No particular point in the progress of the work seems to have been reached on September 11, but on or as of that day, the Government accepted the work as completed. We think that it is quite evident that the work was accepted on that day because that was the day on which the contract time, as extended by the formal change orders, ran out, and therefore no question as to liquidated damages would arise. But it is

equally evident that the plaintiff's requests for other extensions of time, which had not been connected with change orders needed by the Government, were never considered, apparently because it was thought that it was not necessary to consider them, since the work was completed in time. It is further probable that no consideration was given to whether the work should not have been formally accepted earlier than September 11, because, again, there seemed to be no point in doing so. In view, however, of the issue presented by the Government's subsequent assertion that the plaintiff had not shown that it could have completed the work within the contract time without working a 48-hour week, the plaintiff was entitled to have its requests for extensions considered, as the contract provided, and was also entitled not to have the acceptance date arbitrarily fixed to coincide with the date when the contract time ran out.

Since the impossibility of determining whether the plaintiff fulfilled, in strictness, the terms of the agreement for reimbursement, has been created by the Government's failure to perform its part of the contract, we treat the condition to be satisfied by the plaintiff as having been satisfied, and allow recovery for reimbursement.

We limit the reimbursement to the premium pay paid for Saturday work. We think it has not been shown that the job was kept open for overtime on other days or open at all on Sundays, in order to make possible a 48-hour week. We think rather, that any Sunday work that was done would have been done regardless of the executive order, in preparation for the efficient operation of the job on Monday. We do not distinguish, in awarding reimbursement, between men who worked the last eight hours of a 48-hour week on Saturday, and those whose Saturday work left them with a workweek less than 48 or more than 48. We think that the Executive Order in effect required that the job be kept open on Saturday, and if it was open it would have been impossible to exclude workmen who had missed some other day, or those who had worked some overtime on another day. We have assumed that, in most of the trades, some Saturday work would have been worked

regardless of the Executive Order, and the evidence enables us to approximate the amount as equal to the overtime worked before and after regular hours on the other days of the week less the hours worked on Sunday. We base this approximation upon testimony that the number of overtime hours worked regularly Monday through Friday was about equal to the number of hours worked at the "week end," which we take to mean Saturday and Sunday. We therefore balance the Sunday hours against the Monday through Friday overtime and count the difference as Saturday overtime that would probably have been worked regardless of the President's order.

Because the evidence as to the average rate of premium pay, as to several of the trades, included Sunday work, our elimination of the Sunday work from our judgment has, no doubt, made the proved average slightly inaccurate for the Saturday work alone. The variation, however, would be so slight as to be negligible and we have disregarded it in our judgment, though in some of our findings we indicate that the amounts found are approximations.

■ The Government asserts that, because of the insertion in each change order that was made, of a provision that "all claims against the National Housing Authority which are incidental to or as a consequence of the aforementioned changes are satisfied," the plaintiff cannot recover for Saturday premium pay paid in performing the work ordered in the change orders. It is true that when the change orders were made, and accepted by the plaintiff, the plaintiff was working a 48-hour week. But it would have been impossible, in computing the amount of additional compensation requested on account of the ordered changes, to alter the basis on which the orginal bid had been computed, which basis was the 40-hour workweek. How much, if any, of the work added by the change orders would be done on Saturday, no one could tell. The agreement that the plaintiff would be reimbursed for Saturday premium pay if it satisfied certain conditions was in effect when the change orders were given. We think the parties must have understood that this agreement would apply to the

424

whole job, including the work added by the changes, since it would not have been possible to compute the amount on any other basis.

▇ A considerable part of the plaintiff's recovery will be for the benefit of its subcontractors. The rule of Blair v. United States, 321 U.S. 730, 737, 64 S.Ct. 820, 88 L.Ed. 1039, entitled the plaintiff to recover on their behalf. Judgment for $16,209.75 will be entered for the plaintiff.

It is so ordered.