Per Curiam:
This case was referred to Trial Commissioner Mastín Gr. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Buie 134(h). The commissioner has done so in an opinion and report filed on September 18, 1969. Exceptions to the commissioner’s conclusions were filed by plaintiff which urged that his recommendations be reversed in their entirety. Defendant has requested that the court accept the commissioner’s report and dismiss the petition as recommended. The case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court agrees with the commissioner’s opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.
OPINION OP COMMISSIONER
White, Commissioner: This case arose in connection with the performance by the plaintiff of Housing Contract No. DA-08-123-ENG-3261 (“the contract”), under which the plaintiff constructed for the defendant (represented by the Corps of Engineers, Department of the Army) a 150-unit housing project at Fort Allen, a military installation located near Ponce, Puerto Bico. The contract was entered into between the parties on April 28, 1961, in accordance with the provisions of the Capehart Act (42 TJ.S.C. §§ 1594-1594Í .and 12 TJ.S.C. §§ 1748-I748g (1958)).
It is my opinion that the plaintiff is not entitled to recover in the present action.
In attempting to state a cause of action, the plaintiff alleged in the petition that “the contract, as advertised for and as awarded by the defendant, contained a schedule of prevailing rates of wages * * * and represented that said scale of wages were the prevailing wages in the area”; that “the representations as made by the defendant were erroneous and, at the best, were mistaken; and at the worst, were a deliberate misrepresentation of the facts”; that the plaintiff “relied upon the representations * * * and based its bid and entered into the contract with the defendant in reliance upon the scale of *519 wages as therein set forth”; and that “after plaintiff entered into the contract, the defendant required plaintiff to pay a much higher scale of wages than that provided in the contract * *
The “schedule of prevailing rates of wages” referred to in the petition was set out in the contract specifications pursuant to the provisions of the Davis-Bacon Act. That act provided in part at the time (with exceptions not material here) that each Government construction contract should contain a provision requiring the contractor to pay all mechanics and laborers employed directly upon the site of the work wages computed at rates not less than those stated in the contract specifications, “which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision * * * in which the work is to be performed * * *” (40 U.S.C. § 276a (1958)).
On the basis of determinations made by the Secretary of Labor respecting the wage rates for laborers and mechanics prevailing in the locality where the work under the contract was to be performed, the contract specifications provided in paragraph SC-7 that the “minimum wages” to be paid laborers and mechanics on the project should be based upon “minimum rates” per hour of, mter alia, 77 cents for unskilled laborers, 90 cents for carpenters’ helpers, 90 cents for mason tenders, 90 cents for mortar mixers, and 90 cents for brush (water) painters.
The plaintiff did not, at the trial of the case, present any evidence to support the allegations in the petition that the determinations by the Secretary of Labor with respect to the prevailing wage rates in the vicinity where the work under the contract was to be performed were “erroneous,” or “mistaken,” or “a deliberate misrepresentation of the facts.” Therefore, since official actions are presumed to be correct, it must be concluded that the scale of minimum wage rates set out in paragraph SC-7 of the contract specifications was based upon correct determinations made by the Secretary of Labor with respect to the wage rates actually prevailing for *520 the respective classes of laborers and mechanics in the vicinity of Fort Allen.
The plaintiff did introduce at the trial evidence showing that while the work under the contract was in progress the Wage and Hour Division of the Department of Labor informed the plaintiff and Cross Construction Corporation (“Cross”), the plaintiff’s subcontractor for the concrete and masonry work, that their operations under the contract were subject to the provisions of the Fair Labor Standards Act of 1938; and that the plaintiff and Cross were ultimately required by the Wage and Hour Division to comply with the Fair Labor Standards Act by paying all their workmen wage rates at least equal to the minimum rate prescribed under that act.
At the time involved in this case, the Fair Labor Standards Act provided, inter alia, for the issuance from time to time by the Administrator of the Wage and Hour Division, Department of Labor, of wage orders prescribing the minimum rate or rates of wages which employers in Puerto Rico engaged in interstate or foreign commerce were required to pay their workmen (29 U.S.C. § 208 (1958)). The minimum wage rate prescribed by the Administrator for the construction industry in Puerto Rico was $1.00 per hour from the time when the work under the contract was commenced until November 3, 1961, when the minimum rate was increased to $1.15 per hour.
As previously indicated, certain of the minimum wage rates set out in the contract specifications, pursuant to determinations by the Secretary of Labor respecting the wage rates prevailing in the locality where the work was to be performed, were less than $1.00 per hour. Since the plaintiff and Cross had expected to pay their workmen wages in accordance with the minimum rates prescribed in the contract specifications, the requirement that they comply with the provisions of the Fair Labor Standards Act by paying at least $1.00 per hour up until November 3, 1961, and at least $1.15 per hour thereafter, increased the labor costs of the plaintiff and Cross with respect to certain classes of workmen.
It must be noted, however, that paragraph SC-7 of the contract specifications merely prescribed mvrwrvum wage rates *521 below which the plaintiff and its subcontractors could not go in employing laborers and mechanics for the performance of work under the contract. Paragraph SC-7 was not an assurance or a representation by the defendant that the plaintiff and its subcontractors would not have to pay any wage rates higher than those listed in the paragraph. Morrison-Hardeman-Perini-Leavell v. United States, 183 Ct. Cl. 938, 949, 392 F. 2d 988, 995 (1968). The Davis-Bacon Act, pursuant to which paragraph SC-7 was included in the contract specifications, was enacted “to protect * * * employees [of Government contractors] from substandard earnings by fixing a floor under wages on Government projects”; and it does not confer any litigable rights on Government contractors themselves. United States v. Binghamton Co., 347 U.S. 171, 176-77 (1954).
Furthermore, the existence of the contract, with its sched-xde of minimum wage rates prescribed in accordance with the provisions of the Davis-Bacon Act, did not constitute any limitation upon the authority of the Administrator of the Wage and Hour Division, Department of Labor, to issue or enforce under the Fair Labor Standards Act wage orders applicable to employers in Puerto Rico (including Government contractors) engaged in interstate or foreign commerce. Such actions by the Administrator were an exercise of the sovereign power of the United States, for which the Government cannot be held liable in its capacity as a contractor. Cf. Horowitz v. United States, 267 U.S. 458, 461 (1925); Clemmer Construction Co. v. United States, 108 Ct. Cl. 718, 721-22, 71 F. Supp. 917, 919 (1947); Anthony P. Miller, Inc. v. United States, 161 Ct. Cl. 455, 472 (1963), cert. denied, 375 U.S. 879 (1963).
The conclusions previously stated in this opinion are not negatived by the circumstances under which the plaintiff and Cross were required to comply with the provisions of the Fair Labor Standards Act.
At the time when the invitation for bids on the contract was issued in January 1961, there had been no final judicial determination of the question as to whether the Fair Labor Standards Act was applicable to contractors engaged in the performance of construction work at Fort Allen. The Wage *522 and. Hour Division of the Department of Labor had taken the position in the latter part of 1959 that this statute was applicable to such contractors; and the Secretary of Labor had filed a suit in the United States District Court for the District of Puerto Eico in an attempt to enjoin the Five Boro Construction Corporation (which was engaged in the performance of construction work at Fort Allen under two contracts with the Government) from violating the provisions of the Fair Labor Standards Act by paying wages at less than the minimum rate fixed under that act. In August 1960, the district court handed down a decision to the effect that the Fair Labor Standards Act did not apply to the Five Boro Construction Corporation with respect to its operations at Fort Allen. The Secretary of Labor thereupon took an appeal to the United States Court of Appeals for the First Circuit; and this appeal was still pending at the time of the issuance in January 1961 of the invitation for bids on the contract with which we are concerned.
Notwithstanding the adverse decision in 1960 by the district court, it continued to be the official position of the Department of Labor at all times that the provisions of the Fair Labor Standards Act were applicable to contractors engaged in the performance of construction work at Fort Allen. In this connection, it should be mentioned that the invitation for bids on the contract involved here specifically stated in part as follows:
42. Bidders are advised hereby that it will be their responsibility to investigate, by inquiry to the Eegional Wage & Hour Division of the Department of Labor for the area in which the contract work will be performed, whether or not the Fair Labor Standards Act is applicable to the work.
Notwithstanding the admonition quoted in the preceding paragraph, there is no evidence in the record showing that the plaintiff, in connection with the preparation of its bid on the contract, made any inquiry of the regional office of the Wage and Hour Division in San Juan, or of any other office or station maintained by the Wage and Hour Division in Puerto Eico or elsewhere, as to whether the provisions of the Fair Labor Standards Act would be applicable to the *523 work that was to be performed under the contract. Furthermore, the preponderance of the evidence in the record establishes that Cross, prior to entering into the subcontract with the plaintiff, did not make any inquiry of the Wage and Hour Division as to whether the Fair Labor Standards Act would be applicable to work performed under the contract. (See paragraphs (c) and (d) of finding 12.)
On June 15, 1961, while work under the contract was in progress, the Court of Appeals for the First Circuit reversed the 1960 decision of the United States District Court for the District of Puerto Pico in the case of the Five Boro Construction Corporation, and held that such company, in the performance of its construction activities at Fort Allen under contracts with the Government, was subject to the provisions of the Fair Labor Standards Act (291 F. 2d 371). On the basis of that decision, the Wage and Hour Division subsequently compelled the plaintiff and Cross to comply with the provisions of the Fair Labor Standards Act in connection with the performance of the work under the contract involved in the present case, as previously indicated.
Under the circumstances, as outlined in this opinion, it seems reasonable to conclude that the plaintiff and Cross assumed the risk that the Fair Labor Standards Act would be held to apply to construction activities performed by contractors and their subcontractors at Fort Allen.
For the reasons previously stated, it is my opinion that the plaintiff is not entitled to recover in the present action, and that the petition should be dismissed.
Findings of Fact
1. The Metrig Corporation (“the plaintiff”) is a corporation duly existing under and by virtue of the laws of the State of New York.
2. The plaintiff has at all times borne true allegiance to the Government of the United States, and has not in any way voluntarily aided or abetted, or given encouragement to, rebellion against the United States.
3. Cross Construction Corporation (“Cross”) is a corporation duly organized and existing under and by virtue of the laws of the State of New Jersey.
*524 4. (a) On January 5,1961, the Office of the District Engineer, Corps of Engineers, United States Army, Jacksonville, Florida, issued Invitation for Bids No. Eng-08-123-61-40 on a proposed housing contract for the construction of a Cape-hart housing project (under 42 U.S.C. §§ 1594-1594Í and 12 U.S.C. §§ 1748-I748g). The project was to consist of 150 units at Fort Allen, which is located near Ponce, Puerto Rico. The bids were to be opened on February 9, 1961.
(b) The invitation for bids contained, inter alia, the following provisions:
4. The bidder should carefully examine the provisions of the form of Housing Contract attached hereto, including the Drawings and Specifications made a part thereof; visit the site of the housing project; and fully inform himself as to all conditions and matters which can in any manner affect the financing of the construction and the constructing of the housing project or their cost. The bidder’s attention is called to the paragraph “Work by Others” in the SPECIAL CONDITIONS. Should the bidder find discrepancies in, or omissions from, such Drawings and Specifications or other documents attached hereto, or should he be in doubt as to their meaning, he should at once notify the District Engineer, U.S. Army Engineer District, Jacksonville, Corps of Engineers, P.O. Box 4970, Jacksonville, Fla., and obtain clarification prior to submitting a bid. Information given will be transmitted to all known interested bidders.
5. Statutes pertaining to wages and labor (see Section 212(a) of the National Housing Act, as amended) require that wages paid to laborers and mechanics employed in the construction of the project be not less than the prevailing wages as determined by the Secretary of Labor after the application for mortgage insurance is filed and not more than 90 days prior to the commencement of construction. It is therefore not possible to attach to the Invitation for Bids a copy of the prevailing wage determination which will eventually be applicable to the project. Instead, a tentative minimum wage schedule is included in the SPECIAL CONDITIONS. Bidders are advised (i) that the FHA estimated replacement cost was computed on the basis of realistic and reliable wage information available to FHA and relevant to the work to be performed, and (ii) that in no case was any wage rate utilized in the computation of said estimated replacement cost less than that shown on the tentative minimum wage schedule included in the SPECIAL *525 CONDITIONS. Bidders have access to, and in the preparation of their bids are free to, and should, utilize information on actual wages and wage trends in the area where the project is located. Notwithstanding that the prevailing wage determination of the Secretary of Labor applicable to the project will be issued after the submission of bids, after issuance of the Letter of Acceptability, and after the filing of the application to FHA for mortgage insurance, there will be NO adjustment made in the bid on the basis of any differences between the wage rates in the tentative minimum wage schedule included in the SPECIAL CONDITIONS and the “prevailing wage determination” as that term is defined in paragraph 19 of the specimen form of Housing Contract attached hereto. For additional information concerning the prevailing _wage" determination which will be applicable to ■the project see 29 CFB Part 5. The risk of any increases in the minimum wage rates applicable to the project occurring after issuance of this Invitation for Bids shall be on the bidder. * * * '
❖
21. The eligible builder and all his subcontractors will be required to pay all mechanics and laborers employed or working directly upon the site of the housing project not less than tire prevailing wages applicable to the project as determined by the Secretary of Labor. A tentative wage schedule is included in the SPECIAL CONDITIONS as explained in paragraph 5 above. Subsequent, to the date of submission to FHA of a request for mortgage insurance but prior to the actual start of construction, a prevailing wage determination applicable to the project will be obtained from the Secretary of Labor, as stated in the Letter of Acceptability.
❖ * . * * $
42. Bidders are advised hereby that it will, be their responsibility to investigate, by inquiry to the Regional Wage & Hour Division of the Department of Labor for the area in which the contract work-will be performed, whether or not the Fair Labor Standards Act is applicable to the work.
(c) Article XI of the proposed housing contract accompanying the invitation for bids provided as follows:
(16) The eligible builder (1) understands that the wages to be paid laborers and mechanics employed in the construction of the project, whether or' hot such laborers and mechanics are employed directly by the *526 eligible builder or by a subcontractor in the construction of the project, are required by the provisions of Section 212(a) of the National Housing Act, as amended, to be not less than the wages prevailing in the locality in which the work was performed for corresponding classes of laborers and mechanics employed on construction of a similar character, as determined by the Secretary of Labor with respect to the project, and (2) hereby states that he has read the aforesaid determination by the Secretary of Labor and is fully familiar with same.
(if) The eligible builder agrees as a condition precedent to the payment to him of any advance hereunder to submit to the Commissioner (1) with each application for advance prior to the final application, a certificate or certificates, executed by him and in form approved by the Commissioner, certifying that all laborers and mechanics employed in the construction of the project whose work is covered by this or any previous application and who have been paid in whole or in part on account of said employment, have been paid at a rate not less than the rate of wages prevailing m the locality in which the work was performed for the corresponding classes of laborers and mechanics employed in construction of a similar character, as determined by the Secretary of Labor with respect to the project, and (2) with the final application for advance, a certificate or certificates in form satisfactory to the Commissioner, certifying that the project has been fully constructed in accordance with the provision of this Housing Contract, and that all laborers and mechanics employed in the construction of the completed project have been paid not less than the wages prevailing in the locality in which the work was performed for the corresponding classes of laborers and mechanics employed'on construction of a similar character, as determined by the Secretary of Labor with respect to the project.
(18) The eligible builder further agrees to deliver to each subcontractor a written copy of the prevailing wage determination as determined by the Secretary of Labor in connection with the project prior to execution of his subcontract and to require each subcontractor as a part of his contract to agree to pay not less than prevailing wages as so determined; and in order to enable the eligible builder to determine whether such wages are being paid by the subcontractor the eligible builder agrees that each subcontract shall provide that the eligible builder, or the Contracting Officer, shall have the *527 right to inspect the subcontractor’s books, payrolls, and accounts with respect to the subcontract from time to time for the purpose of verifying whether not less than prevailing wages are being paid by the subcontractor. The eligible builder agrees to keep posted in a conspicuous place or places on the project at all times during construction a legible copy of the applicable prevailing wage determination.
(19) The term “prevailing wage determination” as used herein shall be construed to include all amendments and/or modifications to the original or superseding determination of prevailing wages which may be made prior to beginning of construction.
(d) Paragraph SC-7 of the special conditions set out in the specifications of the proposed housing contract provided in part as follows:
a. The minimum wages to be paid laborers and mechanics on this project, as determined by .the Secretary of Labor (Determinations No. Y-11,772 dated 9 December 1960 for general building construction and No. Y-ll,77l for heavy and highway construction) to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the pertinent locality, are as set forth below.
(e) Determinations Nos. Y-11,772 (General Building Construction) andY-11,771 (Heavy and Highway Construction) were copied in, and constituted part of, paragraph SC-7 of the special conditions. Each of these determinations prescribed, inter alia, minimum hourly wage rates of 77 cents for unskilled laborers, 90 cents for carpenters’ helpers, 90 cents for mason tenders, 90 cents for mortar mixers, and 90 cents for brush (water) painters.
5. (a) At the time when the invitation for bids referred to in finding 4 was issued on January 5,1961, the minimum wage rate prescribed under the provisions of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq. (1958)), for the construction industry in Puerto Pico was $1.00 per hour. This rate continued in effect until November 3, 1961, when the minimum rate was increased to $1.15 per hour.
*528 (b) The provisions of the Fair Labor Standards Act were administered by tbe Wage and Hour Division of the U.S. Department of Labor at all times material to this case.
6. At all times material .to this case, the Wage and Hour Division of the Department of Labor maintained (among other branch offices) a' regional office in San Juan, Puerto Eico, a field office in Mayaguez, Puerto Eico (the field office being under the supervision of the San Juan regional office), and a field station, manned by a single investigator, in Ponce, Puerto Eico (the field station being under the supervision of the Mayaguez field office).
7* (a) In the latter part of 1959, the regional office of the Wage and Hour Division in Puerto Eico took the position that the provisions of the Fair Labor Standards Act were applicable to contractors performing construction work at Fort Allen in Puerto Eico. This question arose in connection with' an investigation, which the Wage and Hour Division conducted with respect to the Five Boro Construction Corporation, which was engaged in the performance of two contracts at Fort Allen, one for the construction of buildings to house communications equipment and the other for the construction of mess halls, barracks, and recreation facilities. The Five Boro Construction Corporation disagreed with the position of the Wage and Hour Division that the contractor was subject to the provisions of the Fair Labor Standards Act, whereupon the Secretary of Labor instituted a. suit in the United States District Court for the District of Puerto Eico in an attempt to enjoin the Five Boro Construction Corporation from violating the provisions of the Fair Labor Standards Act by paying wages at less than the 'minimum rate fixed under the act. In August 1960, the district court handed down a decision to the effect that the Fair Labor Standards Act did not apply to the Five Boro Construction Corporation with respect to operations under either of the two contracts previously mentioned. The Secretary of Labor thereupon took an appeal to the United States Court of Appeals for the First Circuit. This appeal was still pending at the time (January 5, 1961) of the issuance of the invitation for bids referred to in finding 4.
*529 (b) Notwithstanding the adverse decision in 1960 by the United States District Court for the District of Puerto Eico, it continued to be the official position of the Department of Labor at all times that the provisions of the Fair Labor Standards Act were applicable to contractors engaged in the performance of construction work at Fort Allen.
8. (a) The plaintiff obtained a copy of the invitation for bids referred to in finding 4. In January 1961, the plaintiff’s president visited the site of the proposed housing project; and, while at Fort Allen, he conferred with the resident engineer of the Corps of Engineers at that installation. The plaintiff’s president informed the resident engineer that the plaintiff expected to bid on the housing project that was being advertised at that time; and he asked the resident engineer about the manpower situation in and around Ponce, about the likelihood of being able to employ competent help, and whether there were men available at the prevailing wage rates set out in the invitation for bids. In this connection, the plaintiff’s president mentioned to the resident engineer that the wage rate of 77 cents per hour for unskilled labor seemed rather low, as it was the lowest figure for such labor that he had ever encountered. The resident engineer Informed the plaintiff’s president that the 77-cent figure was the wage rate that was being paid in the area for unskilled labor.
(b) There is no evidence in the record showing that the resident engineer of the Corps of Engineers gave any inaccurate information to the plaintiff’s president.
9. In preparing a bid in response to the invitation for bids referred to in finding 4, the plaintiff based its calculations respecting labor costs on the assumption, inter alia, that unskilled laborers could be obtained by paying them wages at the rate of 77 cents per hour, that carpenters’ helpers could be obtained by paying them wages at the rate of 90 cents per hour, that mason tenders could be obtained by paying them wages at the rate of 90 cents per hour, that mortar mixers could be obtained by paying them wages at the rate of 90 cents per hour, and that brush (water) painters could be obtained by paying them wages at the rate of 90 cents per hour. (See paragraphs (d) and (e) of finding 4.)
*530 10. There is no evidence in the record showing that the plaintiff, in connection with its prebid investigation after receiving the invitation for bids referred to in finding 4, made any inquiry at the regional office of the Wage and Hour Division of the Department of Labor in San Juan, or at any other office or station maintained by the Wage and Hour Division in Puerto Eico or elsewhere, as to whether the provisions of the Fair Labor Standards Act would be applicable to the work that was to be performed under the proposed housing contract.
11. The plaintiff submitted a bid on the proposed housing contract in response to the invitation for bids mentioned in finding 4. When the bids were opened on February 9, 1961, it was discovered that the plaintiff was the lowest responsible bidder.
12. (a) Cross was another bidder on the proposed housing-project at Fort Allen. When the bids were opened, it was discovered that Cross was the next-to-lowest bidder, only the plaintiff’s bid being lower.
(b) Shortly after the opening of the bids, the plaintiff’s president inquired of Cross’ president as to whether Cross would be interested in working as a subcontractor in the performance of work under the Fort Allen housing contract. Cross’ president indicated an interest in such work, and negotiations between the plaintiff and Cross were carried on with respect to a subcontract covering the concrete and masonry work. Cross prepared and submitted a quotation relative to such a subcontract. In preparing the quotation, Cross based its calculations on the assumption that workmen could be obtained by paying them wages in accordance with the minimum rates prescribed in paragraph SC-7 of the housing contract’s special conditions (see paragraphs (d) and (e) of finding 4).
(c) The preponderance of the evidence in the record establishes that Cross, in connection with the preparation of the bid which it submitted on the proposed housing contract, or in connection with the quotation which it submitted to the plaintiff for a subcontract under the housing contract, did not make any inquiry at the regional office of the Wage and Hour Division of the Department of Labor in San Juan, *531 or at any other office or station maintained by the Wage and Hour Division in Puerto Pico or elsewhere, as to whether the provisions of the Fair Labor Standards Act would be applicable to the work that was to be performed under the housing contract.
(d) (1) In making the factual determination set out in paragraph (c) of this finding, consideration has been given to the testimony of Armengol Iglesias, who was Cross’ vice-president and chief estimator at the time involved here. He testified that when he was getting ready to bid on the proposed Fort Allen housing contract, he went to Puerto Eico in January 1961 and talked to James L. Herriman, Eegional Director of the Wage and Hour Division; that he told Mr. Herriman that he was preparing to bid on the Fort Allen housing project and wanted to know whether the Fair Labor Standards Act would apply to the project; that Mr. Herri-man replied that, according to his knowledge, the Fair Labor Standards Act would not apply; and that if Mr. Iglesias wanted to obtain information from a local source, he should get in touch with the field office for the area where the work was to be done. Mr. Iglesias further testified that he telephoned to the Mayaguez field office of the Wage and Hour Division and was referred by that office to the investigator in charge of the Ponce field station; that he went to Ponce and spoke to “Mr. Sanchez” in the office of the Wage and Hour Division at Ponce; and that “Mr. Sanchez” gave him the same information that he 'had received from Mr. Herriman.
(2) On the other hand, James L. Herriman testified that he did not receive any inquiry from any of the bidders on the Capehart housing project at Fort Allen; and that he never told anyone in 1961 that the Fair Labor Standards Act would not apply in connection with such project. This testimony draws support from the circumstance that in January 1961 the Secretary of Labor was prosecuting an appeal to the United States Court of Appeals for the First Circuit from a decision by the United States District Court for the District of Puerto Eico that the Fair Labor Standards Act was not applicable to a contractor engaged in construction work at Fort Allen, and it was the official position of the Department of Labor at the time that the *532 Fair Labor Standards Act was applicable to contractors engaged in construction work at Fort Allen. So far as the evidence in the record is concerned, there is no reason to believe that Mr. Herriman would misrepresent the official position of his Department.
(3) Also, the evidence in the record clearly shows that the only person assigned to the Ponce field station of the Wage and Hour Division in January 1961 was an investigator named Jesus Torres; and that Amaury Sanchez, an investigator employed by the Wage and Plour Division, was not assigned to the Ponce field station until November 1961. In this connection, Amaury Sanchez testified that, prior to his assignment to the Ponce field station in November 1961, he was never in the Ponce field station, that he never spoke to anyone about the Capehart housing project at Fort Allen, and, indeed, that he was unaware of such project at the time.
13. A “Letter of Acceptability” was issued to the plaintiff in accordance with the customary practice with respect to Capehart Act housing projects. The letter stated in part as follows:
After the filing with FHA of the application for mortgage insurance, the Department will make application to the Secretary of Labor for an appropriate wage determination applicable to the project, and furnish a copy of such wage determination to you and the Commissioner. _No adjustment in the bid price will be made on the basis of differences between the tentative wage schedule included in the Special Conditions and the prevailing wage determination applicable to the project as determined by the Secretary of Labor.
14. (a) Housing Contract No. DA-08-123-ENG-3261 (“the contract”), covering the construction of the 150 units at Fort Allen in Puerto Rico, was entered into between the plaintiff and the defendant (acting through a contracting officer of the Corps of Engineers) on April 28,1961. The contract contained, inter alia, the provisions referred to hi paragraphs (c), (d),and (e) of finding 4, except as indicated in paragraphs (c) and (d) of this finding.
(b) The total price to be paid the plaintiff under the contract was $2,290,000.
*533 (c) During the interval between January 5, 1961 (when the invitation for bids was issued) and April 28,1961 (when the contract was entered into), Determinations Nos. Y — 11,772 and Y-11,771, mentioned in paragraphs (d) and (e) of finding 4, had been superseded by Determinations Nos. Y-22,616 and Y-22,615, respectively. In this connection, paragraph 43 of the general provisions of the contract provided in part as follows:
Wage Determination Nos. Y-11,771 and Y-11,772 stated in Paragraph SC-7 of the contract specifications are deleted and Wage Determination Nos. Y-22,615 dated A-12-61, and Y-22,616 dated 4r-13-61, are substituted therefor.
(d) Determinations Nos. Y-22,616 and Y-22,615 prescribed the same minimum wage rates for unskilled laborers, carpenters’ helpers, mason tenders, mortar mixers, and brush (water) painters that were prescribed in the superseded determinations (see paragraph (e) of finding 4).
15. After entering into the contract with the defendant, the plaintiff entered into a subcontract with Cross, whereby the latter undertook to perform, and subsequently did perform, the concrete and masonry work under the contract.
16. In performing the work under the contract, the plaintiff employed and carried on its own payroll unskilled laborers, carpenters’ helpers, mason tenders, mortar mixers, and brush (water) painters (among other employees).
17. On June 15, 1961, the Court of Appeals for the First Circuit reversed the 1960 decision of the United States District Court for the District of Puerto Pico in the case of the Five Boro Construction Corporation (see finding 7), and held that such company, in the performance of its construction activities at Fort Allen under contracts with the Government, was subject to the provisions of the Fair Labor Standards Act (291 F. 2d 371).
18. (a) In October 1961, Jesus Torres, the investigator of the Wage and Hour Division in Ponce, conducted an investigation of Cross’ operations as a subcontractor under the contract. During the course of the investigation, Mr. Torres informed Cross orally that Cross was subject to the pro *534 visions of the Fair Labor Standards Act with respect to its work as a subcontractor under the contract.
■(b) On November 6, 1961, the supervisor in charge of the Mayaguez field office of .the Wage and Hour Division sent 'a letter to Cross, stating as follows:
All work in connection with the construction of the caption project at Fort Allen, Juana Diaz, P.R., is considered an improvement to an instrumentality of interstate commerce, subject to the minimum wage and overtime provisions of the Fair Labor Standards Act of 1938, as amended, and the Wage Order, Part 672 for the Construction Industry in P.R., setting minimum hourly rates effective as follows: 1/17/58 — $1.00; 11/3/61 — $1.15.
The employees employed by your firm, engaged in construction and related work are entitled to not less ■than the minimum wage rates stated above plus overtime at time and one-half for all hours worked in excess of forty in the workweek.
(c) During the course of subsequent negotiations between the Wage and Flour Division and Cross, the Wage and Hour Division demanded that Cross’ employees who had been receiving wages in accordance with the minimum rates prescribed in the contract specifications (see paragraphs (d) and (e) of finding 4), but less than the minimum wage rate prescribed under the Fair Labor Standards Act (see paragraph (a) of finding 5), should receive from Cross back wages sufficient to bring Cross retroactively into compliance with the provisions of the Fair Labor Standards Act from the time of the beginning of Cross’ operations as a subcontractor under the contract; and that Cross comply with the Fair Labor Standards Act thereafter by paying to all such employees at least the minimum wage rate prescribed under the Fair Labor Standards Act. Cross ultimately complied in January 1962, and thereafter, with both of the demands that were made by the Wage and Hour Division. The back wages which Cross paid to its employees in retroactively complying with the provisions of the Fair Labor Standards Act amounted to approximately $3,600 or $3,700.
19. As a consequence of the Wage and Hour Division’s actions referred to in finding 18, the plaintiff was required *535 to pay the unskilled laborers, carpenters’ helpers, mason tenders, mortar mixers, and 'brush (water) painters on its payroll wages in accordance with the minimum rate prescribed under the Fair Labor Standards Act (see paragraph
(a)of finding 5), instead of the wages which the plaintiff had expected to pay such employees in accordance with the minimum rates prescribed in the contract specifications (see paragraphs (d) and (e) of finding 4).
20. (a) A claim which the plaintiff submitted to the Department of the Army on behalf of Cross and itself,[1] for the difference between the wages which they respectively paid to certain workmen in complying with the provisions of the Fair Labor Standards Act and the wages which they respectively expected to pay to such workmen in accordance with the minimum rates prescribed in the contract specifications, was denied by the Armed Services Board of Contract Appeals on February 11,1963 (ASBCA No. 8455), when the Board upheld a motion to dismiss submitted by the Government on the ground that the Board did not have jurisdiction to grant relief on the claim.
(b) The present action in the Court of Claims was commenced on September 8,1965.
(c) On March 7, 1966, the defendant filed a motion for summary judgment; and on April 25,1966, the commissioner filed an adverse report on the defendant’s motion. Subsequently, the court entered an order on February 20, 1967, denying the defendant’s motion for summary judgment without prejudice and remanding the case “to the trial commissioner for further proceedings, including a determination of plaintiff’s (and its subcontractor’s) requests under paragraph 42 of the Invitation for Bids and of defendant’s actions with respect to the payment of Fair Labor Standards Act wages in connection with plaintiff’s contract.”
(d) The case was tried on the issue of liability only, the amount of the recovery (if any) being reserved for subsequent proceedings under Buie 47 (c) [now Buie 131(c)].
*536 CoNclusioN of Law
Upon tbe foregoing findings of fact and opinion, wbicb are adopted by tbe court and made a part of tbe judgment herein, tbe court concludes as a matter of law that tbe plaintiff is not entitled to recover, and tbe petition is dismissed.

 The claim -was Initially asserted on behalf of Cross; but during the course of the administrative proceedings, the plaintiff indicated that it desired to expand the claim in order to seek relief itself.